**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-CR-00011 (RJL)** |
| | ) | |
| **ALAN FISCHER III,** | ) | |
| also known as "AJ," | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE**
**OF CURFEW DUE TO CHANGE IN CIRCUMSTANCES**

COMES NOW, the Defendant, ALAN FISCHER III, by and through undersigned counsel and respectfully moves this Court to remove curfew as a condition of release due to change in circumstances. Alternately, if the Court is not amenable to lifting the condition of curfew, to then direct Pretrial Services to replace all robocall electronic monitoring with daily weekday calls by Mr. Fischer to his Pretrial Services Officer to confirm that he remains in the Middle District of Florida. The Government objects to lifting curfew unless it is replaced with the more restrictive GPS 24/7 ankle monitoring. Mr. Fischer states the following in support of his request:

**BACKGROUND AND FACTS**

1.  The charges from this case arise from the events that took place on January 6, 2021 at the U.S. Capitol. The initial complaint expended a large amount of words talking about other people, unproven allegations of intent to stop the Electoral Count by thousands of people, and allegations as to what may have happened with others in and outside the US Capitol. As entered in 1:22-cr-00011 ECF No. 32 on February 14, 2022, Mr. Fischer was indicted on serious allegations that involve felonies and misdemeanors, with alleged use of a deadly or dangerous weapon (chair, traffic cone, and pole-like instrument) on the U.S. Capitol grounds. No injury is

alleged. Mr. Fischer denies guilt for the crimes alleged. By the Bail Reform Act and judicial interpretations of the US Constitution, he is presumed to be innocent unless convicted.

2.  Based on Mr. Fischer's motion for release in ECF No. 38, which will not be recounted here, Alan was released on bail with conditions by this Court on March 4, 2022. ECF No. 42-43.

3.  In discussions prior to filing ECF No. 38, the Government did not oppose release after being presented with the truth and supporting evidence as outlined in the motion. However, at the eleventh hour after reviewing the motion prior to submission, the Government demanded the addition of a curfew.

4.  The reason stated by the Government for curfew was that "it is standard in these January 6 cases." There was no evidence of any flight risk. Mr. Fischer voluntarily surrendered when notified there was an arrest warrant. The alleged crimes did not occur in Florida, and they did not occur at night. Given that the U.S. Capitol is likely to remain in Washington D.C. for the period through Mr. Fischer's trial, no U.S. Capitol protest events will be occurring in Florida, either in the day or nighttime, should the Government falsely contend that Alan is a threat.

5.  At the time of the motion for release at ECF No. 38, Mr. Fischer's health was in decline given jail conditions where those detained were not regularly allowed outside cells, and his disabilities require daily physical activity, walking, and the application of heat. Given the choice of adding more time in jail while the Government submitted an objection response to release conditions without curfew, and then time for the Defendant's reply, the defense acquiesced to curfew as the lesser evil. It was an unexplained deprivation of the fundamental rights to travel, speak and associate, but as explained at the time would not interfere with employment. At no time were electronic monitoring and sleep deprivation stated as being part of curfew.

6.  The Court approved the unopposed motion for release conditions that included curfew. ECF No. 42 - 43. The signed release order did not authorize or require electronic monitoring. The AUSA did not request electronic monitoring or voice recognition.

   a.  The Court form, "Order Setting Conditions of Release, AO 199B does not conflate curfew with electronic monitoring. "Curfew" is in a distinct section of the AO 199B order on page 2 under 7(p)(i) "location restrictions." ECF No. 42.

   b.  AO 199B Section 7(q) on page 3 of the release paperwork (*id*.) specifically provides for an option to require that a defendant submit to location monitoring technology. ECF No. 42 ordered no use of voice recognition or electronic monitoring technology, with no checkmarks in section 7(q) on page 3 of the order for Mr. Fischer. Yet Pretrial Services forced Mr. Fischer to submit to voice recognition, pay for a landline phone, and agree to electronic monitoring without ever requesting this Court's approval.

   c.  The order of release at ECF No. 42 by its plain English more than infers that curfew is to be honored by Mr. Fischer without electronic monitoring just as is every other condition of his release.[1]

   d.  The Court made clear to all co-Defendants at their joint arraignment on March 24, 2022 that deliberately failing to honor any release condition will most likely result in revocation of release and return to jail.

7.  The Government presented no evidence that Mr. Fischer is a flight risk or a danger to anyone in the community. The conditions of release state that Mr. Fischer may not travel to D.C. except for court matters.

---

[1] Noting here that no discovery provided to date has included paperwork that shows Mr. Fischer is now on a terrorist watch or no-fly list, which would be using computer electronic monitoring. There are indications in discovery that other defendants have been added to terrorist no-fly and watch lists.

8.  Mr. Fischer has remained 100% compliant with the conditions imposed since his release from jail on March 4, 2022. He surrendered his passport to Pretrial Services. He is employed. He reports to Pretrial Services. The Pretrial Services report (ECF No. 51) submitted to the Court for the May 25, 2022 status hearing stated that Mr. Fischer is compliant.

9.  Mr. Fischer's release conditions require him to remain employed. His primary employment is in the mortgage broker business.

10.  Pretrial Services considered Mr. Fischer's known work hours right after his release in March 2022 to set curfew hours. The hours accommodated Mr. Fischer's schedule that can include evening meetings with clients and a drive home through areas known for traffic delays.

11.  Mr. Fischer's work circumstances have changed based on the economy. The Federal Government recently began increasing interest rates. Ongoing corporate and speculator acquisitions of available single-family homes, and an influx of new residents to Florida, and "supply chain" building material shortages for new homes all contributed to significant increases in the market prices of homes. Inflation, rising interest rates, and the increases in home prices resulted in a decrease in mortgage applications as veterans and potential buyers whom Mr. Fischer serves are either priced out of the market or are hesitant to purchase a home with mortgage now. Buyers' deliberate delays in home purchases and mortgages negatively impacted Mr. Fischer's income.[2]

12.  Mr. Fischer sought a second job to ensure his financial stability in the new circumstances of the mortgage market and increasing inflation. His second job involves remote site rescue operations where he remains on-site at remote locations where usual first responders

---

[2] Politico, "Surging mortgage rates add to Biden's economic woes," May 10, 2022. https://www.politico.com/news/2022/05/10/mortgage-rates-inflation-biden-economy-00029681. Last visited June 2, 2022. NPR and numerous finance publications announced by early to mid-March 2022 the impending interest rate hikes the Federal Reserve Chairman intended to implement.

cannot timely arrive in the event of an emergency. Workers may be working in huge tanks and other confined spaces that require rescue using ropes and ladders. Cellular phone service is sporadic; and site communications for emergencies rely on radios and landlines. Mr. Fischer does not receive more than a few days of advanced notification of the available shifts. Sometimes advanced notification is only twenty-four hours. Night shifts are common. Shifts may be cancelled shortly before the start time due to contract and site readiness issues.

13.  Mr. Fischer will not be eligible for his periodic rescue work employment if he is unable to work night shifts when required because he cannot provide 72-hours advanced notice to Pretrial Services.

14.  At rescue sites, Mr. Fischer is on standby when not engaged in required inspections, site walk-throughs or an actual rescue. Mr. Fischer remains productive during standby periods on site since the contractor allows Mr. Fischer to use his personal cell phone (if he can get a connection) and his laptop to do other activity. He must remain awake.

15.  Mr. Fischer balances his work hours for the two jobs and gives Pretrial Services immediate notice when he is offered rescue shift work that will be during night curfew hours.

16.  Nothing published in the Pretrial Services Agency (PSA) policies, budget or in public on-line searches states that electronic monitoring is required as the sole method used to check on curfew compliance. Showing up at Mr. Fischer's front door or calling his landline at a reasonable hour when curfew begins to check that he is home is authorized. However this is apparently no longer part of PSA operations in the Middle District of Florida.

17.  Pretrial Services contracts out "curfew monitoring" to a commercial for-profit company. Regardless of this Court's intent, Pretrial Services does not consider Mr. Fischer to be on his honor to obey curfew. Pretrial Services uses no simple, cost-effective system such as

directing a defendant to use a landline to call a voicemail or an answering service that can capture time and caller ID. There is no simple non-oppressive system to verify curfew compliance, such as use by a defendant of email or text message from a fixed IP address to a Pretrial Services address before hours of sleep. There is no easy system where regular calls throughout the week by a defendant to Pretrial Services during their business hours can alleviate any concern about compliance with remaining in the Middle District of Florida unless authorized to leave.

18.  Pretrial Services' unpublished administrative policy and curfew monitoring operation, where no oversight or approval is evident, imposes rules where Mr. Fischer must be electronically monitored with voice recognition at any hour on any day randomly selected for robocalls that he must immediately respond to, even though this Court issued no such electronic monitoring or voice recognition order. The Government has not only demanded continuous electronic entry into Mr. Fischer's home at night - it has given itself continuous authority to electronically enter the inner sanctum of his bedroom every night.

19. PSA electronic monitoring lacking any court order amounts to a Fourth Amendment warrantless search, where defendants on curfew must submit a comprehensive voice recognition sample to the contracted commercial company. The voice sample well exceeds a few words or sentences that a defendant may legally be required to read in a law enforcement identification line-up.  Defendants are required to submit to artificial intelligence computer software as part of electronic monitoring of curfew compliance.

20.  Mr. Fischer has no control or visibility over the storage, transmission, usage, or security of his voice sample. He would have no control or visibility on location data collected by the private company monitoring GPS ankle monitoring.

21.  Pretrial Services in the D.D.C. jurisdiction admits in its budget and financial statement[3] that its data security within PRISM is outdated, despite storing digital records going back decades for all persons who were arrested.

22.  Pretrial Services' staff monitoring of curfew in essence consists of the following: providing the curfew hours for robocalls by a contracted private service, receiving notification at some point during Pretrial Services' weekday work hours if a defendant did not respond to a robocall; and gathering information from other sources such as law enforcement reporting as to potential instances of noncompliance.

23.  Those on curfew must pay for and maintain a physical landline phone at their residence. Mr. Fischer's paperwork states that he also can be billed $1.50 per robocall.

24.  Robocalls occur during all hours of the curfew period without regard for sleep. Given a nighttime curfew when not working of 11:30 P.M. until 6:30 A.M., (and not 10:30 P.M. as inaccurately reported in ECF No. 51), Mr. Fischer must answer the phone even if he is asleep to not be considered in violation of curfew. The robocall provides a required response (such as a series of numbers) where Mr. Fischer must turn on a light, write the required response down, and then make a call to a given phone number from his landline within minutes; and then accurately recite the required and correct response to the voice recognition system.

25.  The curfew monitoring calls may be multiple times a week. No consideration is given to Mr. Fischer's sleep schedule. Just because curfew starts at 11:30 PM does not mean he is not at home earlier than the curfew start time and is not asleep if he must depart for work by 6:30

---

[3] "PSA will now work towards securing and reinforcing PRISM, our legacy CMS, to bring it into compliance with modern IT security standards. . . ." PSA District of Columbia, FY 2021 Agency Financial Report, November 15, 2021, at 25. The District of Columbia entity also services the US District Court for the District of Columbia.

A.M. the following day. As a not all-inclusive list, some of the call times that disrupted and deprived Mr. Fischer of sleep for hours were:

     a. 3/19/2022 at 1:59 AM

     b. 4/7/2022 at 12:13 AM

     c. 4/8/2022 at 1:30 AM

     d. 4/14/2022 at 11:58 PM

     e. 4/15/2022 at 12:04 AM

     f. 4/22/2022 at 1:47 AM

     g. 5/20/2022 at 5:01 AM

26. Given AUSA guidance, Pretrial Services has accommodated Mr. Fischer's night job so that he may support himself and be financially responsible.

27. Pretrial Services states they do not work every day and do not work 24/7; and cannot accommodate changes to work schedules in less than 72 hours.

28. Because of inflexibility, and Pretrial Services mandated use of location monitoring technology that was not ordered by the Court as part of curfew release conditions, Pretrial Services recommended in ECF No. 51 that the Court require Mr. Fischer to provide 72 hours' advanced notice of night shifts - even though Mr. Fischer may not have 72 hours' advance notice.

29. Pretrial Services conducted multiple unannounced searches of Mr. Fischer's residence and stated they can show up anytime; and he is required to allow entry for a search of his residence. The illegal searches in violation of the Fourth Amendment were during the day while the parents were not at the residence. The searches included going into all spaces where Mr. Fischer has a reasonable expectation of privacy plus the parents' bedroom and other private spaces where there is an expectation of privacy by them. The searches included opening and

viewing all closets in the home and the contents in the parents' garage. These were not walk-throughs that are normally a one-time event to check habitability. Mr. Fischer is not a convicted felon subject to parole rules for unannounced warrantless searches.

30.  The AUSA objects to elimination of curfew while providing no reason that a curfew with electronic monitoring and voice recognition is both reasonable and a least restrictive means to accomplish anything. With Mr. Fischer not posing  danger to anyone and not a flight risk, the Government just refers to curfew as "standard" - a contradiction of the Bail Reform Act that allows for imposition of release conditions when they are needed to ensure safety of the public and attendance by a defendant in court. Instead of supporting any reasonable modification, the Government demands that the more restrictive 24/7 GPS monitoring replace curfew.

## **MEMORANDUM OF LAW**

### I.  **Statutes and Cases**.

Under 18 U.S.C. 3142(c)(3), The Bail Reform Act, the Court may change the condition of release at any time. Here Mr. Fischer requests that the condition of curfew be lifted.

18 U.S.C. § 3142(c), states that when release on own recognizance is not allowed, and release conditions are ordered, the mandatory requirement is that release will be subject to the condition "that the person not commit a Federal, State, or local crime during the period of release and . . . the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to . . . 42 U.S.C. 14135a." § 3142 (c)(1)(A).  The statute provides a list of thirteen possible options for release conditions that are not all inclusive. For other release conditions imposed, the least restrictive means are to be used to ensure safety of the community or appearance in court by defendants. § 3142(c)(1)(B). Compliance with a curfew is one of unlimited options available to the court to release a defendant on bail.

The government conducts "a search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual." *Grady v. North Carolina*, 575 U.S. 306, 309 (2015). The Fourth Amendment protects against unreasonable searches. "The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady*, 575 U.S. 306, 310.

## II.  **Argument and Analysis**.

The Government demands that if curfew does not remain intact with electronic monitoring and voice recognition under Pretrial Services mandates that limit notification of work hours, regardless of whether it causes Mr. Fischer to not be able to maintain full employment where he can be financially responsible, that Mr. Fischer should have the more restrictive condition of a 24/7 GPS location tracking device that equals a physical search attached to his body. There is nothing reasonable about this demand for 24/7 searches based on Mr. Fischer's character or record. He is a responsible individual with long-standing values of decency in his treatment of others. He is invested in building a home life in the Middle District of Florida with his fiancée. He surrendered his passport and is pursuing additional work locally. He has fully complied with release conditions.

Mr. Fischer's work requires that he be able and ready to climb ropes and ladders under emergency conditions in confined and dangerous spaces at remote sites. GPS devices can cause injury to the wearer when they snag on ladders and construction equipment. Further, the ankle bracelet works by collecting a GPS satellite signal. Because of the small receiver, those GPS signals can be blocked by atmospherics, heavy rains that are common in central Florida, metal buildings, and work inside areas that impede signal transmission - as required for Mr. Fischer. If

Mr. Fischer is inspecting lower levels of metal buildings or ascertaining access for a rescue in a steel tank, his GPS connection will be lost. He cannot run outside and spend 30 minutes of phone calls and attempts to reconnect with the GPS signal  to avoid being reported as violating requirements for the ankle monitor.

Further, the second part of the monitoring technology requires a continuous connection between the ankle monitor and the cellular system. This connection passes along the GPS location data to the monitoring company, that controls all the data concerning Mr. Fischer's locations for as long as he would wear the GPS monitor. Mr. Fischer will be working in remote areas where cell connectivity is limited and sporadic. Driving to work sites will likely include areas that have no cell signal. Rural Florida is not equal to downtown Tampa for cellular and internet access. When the transmission of data is not working or the battery is depleted, the monitor wearer receives audible alarms that require that he immediately make calls to adjudicate his location. In the case if battery depletion, the wearer must stand next to an outlet for the one to two hours it requires for the battery to charge twice a day. A call regarding the alert f loss of data transmission will require the wearer to stand outside even if it takes thirty minutes or more to try to get the GPS ankle monitor data to transfer via cell system connectivity. Expectations for actions during lightning storms are unclear.

**A.  There is No Reasonable Cause or Compelling Reason to Search Mr. Fischer by Tracking His Location 24/7 Using a GPS Ankle Monitor.**

Mr. Fischer has complied with all release conditions. He added a second job due to the downward economy's impact on his first job and reduced income. In addition to GPS location monitoring being unlikely to function at his work sites, the AUSA wants any amount of work at night to cost Mr. Fischer from $187.00 - $300.00 up-front per month for the GPS service - on top of inflation and out-of-control gas prices. Location monitoring is unduly burdensome in these

circumstances as it impacts safety, and there is no reason to track Mr. Fischer 24/7 through an attachment to his body.  Requiring 24/7 GPS monitoring because Pretrial Services created electronic monitoring for curfew such that work schedule changes cannot be accommodated with less than 72-hours advanced notice is unreasonable. Making 24/7 GPS monitoring a condition of release for Mr. Fischer who will appear for court and will remain peaceable is not the least restrictive means and is not reasonable. Other options, such as requiring Mr. Fischer to agree to have to pay a designated amount if he does not appear for Court are reasonable and less restrictive.

     B. **The Court Should Remove the Curfew so Mr. Fischer Can Maximize Employment Opportunities in Worsening Economic Circumstances**.

     Curfew monitoring requirements were imposed by Pretrial Services outside of what was ordered by the Court. Under *Grady* and the Bail Reform Act, substituting the more restrictive means of a physical search by 24/7 GPS monitoring because Pretrial Services cannot operate flexibly to receive night shift hours 24 hours in advance on weekdays is not reasonable justification for 24/7 physical search and is not the least restrictive means available. Mr. Fischer has no drug dealing or criminal past that warrants curfew home confinement with monitoring to protect anyone. He made no verbal threats against anyone. He was allowed to self-surrender. Mr. Fischer was not arrested in this case until a year after January 6, 2021. During that year and since his release in March 2022, he made no attempt to flee and posed no threat to anyone during any hour of the day or night.

     Use of robocall electronic monitoring technology that cannot be adjusted for call timings in less than 72 hours was not ordered as a condition for Mr. Fischer to be released with a curfew while remaining employed. Why are we locking him inside his house overnight? He is not a convicted burglar or night stalker. Additionally, there is **no statistical data or study showing**

**that curfews** do anything to ensure presence in court or reduce future crime among pretrial defendants who remain innocent until proven guilty. PSA does not publish readily available statistics for how many defendants on curfew it supervises at any given time or even for a fiscal year. There is no correlation between Pretrial Services' curfew implementation through electronic monitor mandates and assurance that Mr. Fischer shows up for court or remains peaceable. No reliable published data is available to show what curfew accomplishes besides serving as a period of home confinement.

In short, the Government demands either a continuous physical search of Mr. Fischer for the convenience of Pretrial Services or that Mr. Fischer discontinue employment opportunities. He needs to pay his bills and support himself. The Government provided no rational, let alone compelling reason for a curfew or GPS monitoring. The limitations of the technology employed and the contracting out of government functions should not create a burden to be borne by Mr. Fischer as he awaits trial. Significantly, the Government's use of the words "standard condition" contradicts § 3142 that requires a decision on a case-by-case basis given facts and the totality of circumstances. Curfew is not a standard for January 6 defendants' release. Every case is unique under the Bail Reform Act. Each judge makes his or her own assessment and decision. In this case, the court approved the condition agreed upon by the parties where circumstances and information known about curfew monitoring have since changed.

### C. **The Use of a GPS Monitor Will Exacerbate Known Disabilities**.

In addition to the injury that a GPS monitor may cause Mr. Fischer in his rescue work on ladders and ropes in confined spaces, and in addition to the threat that delays caused by the device pose to success of a rescue operation regarding the lives of others, Mr. Fischer's recorded disability previously addressed with the AUSA while he was in jail can be alleviated with heat

treatments and physical therapy activities that may include swimming and hot baths. The GPS monitor will not work when submerged in water. The devices are allegedly water resistant but come with no guarantee of being waterproof after lengthy immersion. Even if waterproof, the ankle bracelet cannot transmit data when submerged in water. There is nothing to indicate tracking is necessary or more important than Mr. Fischer's health. The Bail Reform Act and initial uses of GPS monitors were not designed under the concept that the Government should invent future crimes for any defendant as a reason to remove Fourth Amendment rights against unreasonable searches or to create imaginary cause for deprivation of liberty.

### D.  **Alternative Options Exist for Retaining Curfew While Allowing Work**.

Pretrial Services' reliance on a for-profit entity to do traditional government work to monitor curfew as a condition of release, has alternatives. The Court may order Mr. Fischer to use readily available existing alternatives such as periodic phone calls from the home landline to a voicemailbox that verify he is at home and checked-in for curfew hours that remain in effect when he is not working nights. Curfew has been around for many decades as a condition used for release. Monitoring compliance with curfews does not require electronic surveillance robocalls or voice recognition technology.

It is unreasonable to require that for Mr. Fischer to work the available rescue hours he must give Pretrial Services 72-hours' advanced notice for night work when he does not receive 72-hour's advanced notice. He fortunately found periodic work to augment the economic downturn in his primary work field. It is unreasonable to state that if Mr. Fischer wants to work and support himself, which is a fundamental right, that he cannot do so when reliable means exist to verify that he complies with night curfew when not working.

14

GPS monitoring use has exploded over the last decade with multiple publications reporting a 140% increase from 2008 - 2015. GPS use started as a means to allow prisoners to be released early to home confinement as part of the sentence. GPS monitoring was hailed as a method to track convicted sex offenders and ensure they did not go within a certain proximity of schools and other facilities. The monitoring allowed for a reduction in jail and prison populations where the remainder of sentences could be served under home confinement. The Government appears to have in effect turned GPS monitors into expensive shackles and scarlet letters for those yet to go to trial despite no threat posed and no evidence the person will not appear in court.

If the Government is concerned that Mr. Fischer did not take this Court seriously that he will be jailed if he deliberately violates his conditions of release, the GPS monitor is not the least restrictive means to ascertain compliance. There are "old school" methods of verifying compliance, such as the defendant calling the Pretrial Services officer or a voice mailbox from a landline upon arrival home when not working nights. Mr. Fischer could be required to sign an unsecured bond that he will be required to pay if he violates release conditions. If Mr. Fischer were to be cited for a traffic violation, or to post a picture of himself at a restaurant after curfew when not working or traveling to and from work at night for example, the respective police report or the ongoing FBI social media information from their "Insurrection Hunters" zealots for January 6 defendants will send reports to Pretrial Services.

### E.  Electronic Monitoring of Curfew is Not Required.

As noted in the facts above, the release order did not designate electronic monitoring. Pretrial Services presumes that it must electronically monitor curfew for defendants awaiting trial. Under what authority does Pretrial Services institute electronic monitoring on its own?

Under 18 U.S. Code 3154 - Functions and Powers Relating to Pretrial Services - they are to:
"Develop and implement a *system to monitor and evaluate bail activities*, provide information to
judicial officers on the results of bail decisions, and prepare periodic reports to assist in the
improvement of the bail process." (Emphasis added). Thus Pretrial Services is supposed to
*monitor all* bail activities.

      The term "electronically monitor curfew" is used nowhere in the statutes for Pretrial
Services. The Glossary of Terms published by The District of Columbia Pretrial Services, that
includes support to this Court, <u>defines monitoring</u> as: "A case management method that includes
at least one of the following - address or employment verification, passport or other document
surrender, personal third-party custodian (not organizational), "live-at" conditions, and/or a stay
away from place condition *not supervised by electronic location monitoring. **Most monitored
conditions are one-time verification conditions**. . . ."* (Exhibit 1).

      Pretrial Services are required to *monitor and evaluate* bail activities. The 18 U.S. Code
3156 Definitions do not define "*monitor*." Turning to standard English, *monitor* is a verb and as
used in the statute, does not equal *electronically monitor*. As addressed *supra*, the Court must
order *electronic monitoring* (transitive verb use). Black's law dictionary on-line defines
monitoring as: "To ensure one is on course and on schedule in meeting objectives and
performance targets, one supervises activities in progress."  Merriam -Webster on-line defines
the verb "<u>to monitor</u>" as "to watch, keep track of, or check usually for a special purpose." The
on-line Cambridge English dictionary defines the verb <u>*monitor*</u> as "to watch and check a
situation carefully for a period of time in order to discover something about it."  None of these
credible sources indicate the verb "to monitor" transforms into a monitoring device as a noun or
object, or equals the transitive of "electronic monitoring." Yet Pretrial Services equates its job "*to*

*monitor*" bail compliance for curfew with using electronic monitors (the physical objects) and demands that defendants comply with Pretrial Services' delegation of its duty to a private business using location monitoring equipment with voice recognition and regular robocalls that deprive defendants of sleep.

###    F.  Implementation of Contracted Electronic Monitoring Services with Robocalls for Night Curfew Inflicts Sleep Deprivation

Not long ago, U.S. Military and CIA interrogation tactics for captured suspected foreign terrorists caused a human rights uproar. Sleep deprivation was one of the highlighted topics that was labelled as torture. The U.S. Constitution's Eighth Amendment addresses the topic of cruel and unusual punishment. Item number 25 in the above facts provides a sample of robocall hours. While some people might not experience sleep deprivation where the robocall sleep disturbance requires they awaken fully to respond, being able to quickly get back to sleep is not Mr. Fischer's experience. Without turning this into a science paper on sleep studies, it is generally accepted across the medical community that sleep deprivation is harmful to brain and physical body health, cognitive performance, and response times. Accident investigations normally inquire into the amount of sleep for the drivers involved. In the case of the curfew monitoring robocalls, there is anxiety created by the possibility of missing calls such that deep sleep, otherwise known as REM sleep, does not occur or is harmfully minimized. These calls are not the same as momentarily waking from a dream and then going right back to sleep. The bedroom light must be turned on and active engagement for listening and dialing a call to provide the accurate response is more than a temporary awakening. As the sample times show, robocalls occur on consecutive nights. These make sleep deprivation even worse because the period extends over 48 hours.  Pretrial Services presumes noncompliance that needs to be caught by electronic

monitoring rather than Mr. Fischer being characterized as honorable and present where he is supposed to be located.

## CONCLUSION

If the court decides to retain curfew, the court should order that the "old school" method be employed where Mr. Fischer can call Pretrial Services multiple times a week from his landline to verify that he is at home by the start of curfew on non-work nights.

## REQUESTED RELIEF

WHEREFORE, Mr. Fischer respectfully moves this Court to remove the curfew condition, and order Pretrial Services to cease home searches. Alternatively, if the Court retains curfew, Mr. Fischer respectfully requests that the Court order termination of robocall electronic monitoring of his curfew; that he be allowed to provide Pretrial Services with twenty-four hours or more advance notice during business hours of upcoming night shift work; and that he be allowed to leave voice messages or email Pretrial Services from his fixed landline or home IP address several times a week to confirm he is home for curfew.

Dated June 6, 2022

Respectfully submitted,

/s/ Carolyn A. Stewart
Carolyn A. Stewart, D.D.C. Bar No. FL0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

**CERTIFICATE OF SERVICE**

On this 6th day of June 2022, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

*/s/ Carolyn A. Stewart*
Carolyn A. Stewart
Defense Attorney