UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:22-cr-11 (RJL) |
| v. : | |
| : | |
| ALAN FISCHER III, : | |
| also known as "AJ," : | |
| : | |
| Defendant. : | |

### RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States respectfully opposes the defendant's pending motion to modify the conditions of his release, in which he asks the Court to eliminate his curfew or require the Office of Pre-Trial Services for the Middle District of Florida ("PTS") to create a new monitoring system tailored to his desires. *See* ECF No. 61. The defendant styles his motion as ". . . due to a change in circumstances," but the change the defendant refers to—he began a new second job— does not impact his risk of flight or nonappearance and/or the danger he presents to the community. *See* 18 U.S.C. 3142(c)(1). Indeed, the defendant does not even *claim* that his new second job makes him less of a flight risk or danger; instead, he argues that the Court never should have imposed a curfew in the first place. *See generally* ECF No. 61. As such, the defendant has not provided a proper basis for his motion and the Court should deny it.

Even if the Court reaches the merits of the defendant's motion, the Court should deny it on those grounds as well. Some form of location monitoring is necessary to ensure the defendant's compliance with the travel restrictions imposed by the Court. PTS has only two available means to conduct that monitoring: (1) by a curfew, verified by random calls during the curfew time period to a landline installed at the defendant's residence; or (2) via a GPS ankle monitor. The defendant objects to both methods as inconvenient and intrusive, but PTS does not

have the practical capability to invent a new monitoring system just to accommodate this defendant's preferences and comfort.

## I. Charged Conduct and Procedural History

On January 13, 2022, United States Magistrate Judge G. Michael Harvey authorized a criminal complaint charging the defendant with multiple felonies and misdemeanors related to his conduct during the riot at the U.S. Capitol on January 6, 2021, including a count of assaulting, impeding or resisting an officer using a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b). Per video footage as described and screenshotted in the sworn affidavit of an investigating FBI agent, the defendant is a member of the Proud Boys who, along with a group of other Proud Boys and rioters, spent 45 minutes attempting to breach the line of police officers guarding an entrance to the U.S. Capitol by collectively using their bodies to push against the officers. As the group rocked back and forth against the officers, the defendant vocally encouraged other rioters to continue fighting the officers. Ultimately, the defendant and his Proud Boy co-defendants failed to breach the police line at that location.

The defendant then moved elsewhere on the west front of the Capitol, where he threw an orange traffic cone and a chair in the direction of other officers. Shortly thereafter, he threw a pole at another group of officers, and then another chair at a third group of officers.

On January 14, 2022, law enforcement officers arrested the defendant in his home state of Florida on that criminal complaint. That same day, the defendant had his initial appearance in the Middle District of Florida (MDFL). *See United States v. Fischer III*, 8:22-mj-1043-JSS, ECF No. 6. The presiding magistrate judge, the Honorable Julie S. Sneed, found that the defendant's violent conduct at the U.S. Capitol on January 6, 2021, and his background demonstrated that he represented a danger to the community. *Id.* ECF No. 7 at 2. Magistrate Judge Sneed further

found that the evidence against the defendant was strong, he had only resided in the MDFL for a short time, he possessed a passport, and he had recently traveled international; accordingly, Magistrate Judge Sneed also found that the defendant presented a risk of flight. *Id.* Consequently, Magistrate Judge Sneed ordered that the defendant be detained pending trial. *Id.*

On February 9, 2022, a grand jury seated in the District of Columbia indicted the defendant, adding him to the instant case, *United States v. Johnson, et al.*, 1:22-cr-11, in which the co-defendants are the other Proud Boys with whom this defendant coordinated his 45-minute effort to push through the police line guarding an entrance to the U.S. Capitol. *See* ECF No. 32.

On March 2, 2022, the defendant moved to be released from pre-trial detention. *See* ECF No. 38. After further briefing by the parties, *see* ECF Nos. 40-41, this Court granted the defendant's motion, *see* ECF No. 42, and set conditions of release, *see* ECF No. 43. The Court's conditions included ordering the defendant to

> (7)(a) submit to supervision by and report for supervision to the Middle District of Florida as directed.
>
> [. . .]
>
> (f) abide by the following restrictions on personal association, residence, or travel: <u>Stay away from Washington, D.C.</u> except for court-related appearances. Notify Pretrial Services of travel outside the Middle District of Florida. Obtain Court approval for travel outside of the United States.

and [ . . .]

> (p) participate in one of the following location restriction programs and comply with its requirements as directed.
> (i) <u>Curfew</u>. You are restricted to your residence every day as directed by the pretrial services office or supervising officer.

*Id.* (emphasis added). Approximately three months later, the defendant filed the instant motion. *See* ECF No. 61.

## II. PTS Capabilities

PTS in the MDFL has only two ways to monitor compliance with geographic restrictions—such as the Order that the defendant stay away from Washington, D.C.—and curfews: (1) GPS ankle monitors and (2) automated calls during curfew hours, which must be answered by the defendant, to a landline installed at the defendant's residence. There is no third option.

Outfitting the defendant with a GPS ankle monitor is the easiest option from the perspective of PTS, but also the most expensive to the government and the most intrusive to the defendant. Other than wearing the device at all times, the GPS ankle monitor requires no further action by the defendant nor interaction between PTS and the defendant. By periodically reviewing the data, PTS can determine whether the defendant ever violated his conditions of release, such as by traveling to Washington, D.C. or failing to be inside his house during curfew hours.

Alternatively, PTS can monitor compliance by periodic phone calls to a landline installed at the defendant's residence, which the defendant must answer with his own voice to confirm he is where he is supposed to be. To guard against defendants gaming the system, these calls are unscheduled. A computer program randomly determines on which days the defendant receives a call and at what time during the curfew period.

PTS has neither the resources nor the systems in place to offer a third option for monitoring compliance with geographic restrictions and/or curfews.

## III. Argument

The Bail Reform Act, 18 U.S.C. § 3142, states that a defendant's detention hearing may be reopened at any time before trial where the Court

4

finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2). The burden is on the defendant to establish that modification of his conditions of release is justified by a new, material change in circumstances that makes him *more* likely to appear in court as required and *less* of a danger to the community. The central defect of the defendant's motion is that he does not address those factors at all. He does not even argue that he is more likely to appear in court as required now than he was on March 4, 2022, when the Court set his conditions of release. *See* ECF Nos. 43, 61. He does not explain whatsoever why he is less of a danger to the community today than he was then. *See generally* ECF No. 61. The Court thus has no proper basis on which to grant the defendant's motion.

Instead, the defendant portrays himself as a victim: of overreach by this Court; of overreach and constitutional violations by PTS; of disruptions to his sleep; of limitations on his ability to work at the job or site of his choice; of climbing interest rates and gas prices; and of hesitant home buyers. He asks this Court to reverse itself and eliminate his curfew because he does not like either of PTS' available methods to monitor it. *See generally id.* Even if the Court credited every one of the defendant's unsubstantiated claims about the incompatibility of his new job with monitoring or enforcement by PTS as directed by this Court,[1] the defendant has failed to address—let alone meet—the threshold requirement set forth in 18 U.S.C. § 3142(f)(2) and the Court should deny his motion on that basis alone.

---

[1] Notably, co-defendant Brian Boele—the defendant's father—claimed at his initial appearance in the MDFL on June 3, 2022, that he performs the same type of short-notice remote site rescue work. *See United States v. Boele, et al.*, 8:22-mj-1571-JSS. Boele, who was and is represented by the same attorney as this defendant, similarly argued (at great length) that this work was incompatible with both a curfew and GPS monitoring. Magistrate Judge Sneed rejected this argument and gave the defendant the choice between a curfew and GPS monitoring. Boele chose curfew.

Moreover, the defendant has also made no effort to put PTS in touch with his job site supervisor so that they can work together to craft a work arrangement that fits within the context of the Court's restrictions. Instead, the defendant seeks to throw the baby out with the proverbial bath water, asking the Court to eliminate his curfew/location monitoring entirely. The Court should decline the defendant's invitation to ignore its own finding that the defendant represented some level of danger to the community and risk of nonappearance because he dislikes how PTS monitors his compliance with the Court's conditions. An unsecured bond, which the defendant suggests, *see* ECF No. 61 at 12, 15, is insufficient.

Additionally, the Court should decline to adopt the defendant's apparent view that PTS should create a new, special method of monitoring compliance with curfew and travel restrictions just for him. The defendant proposes that he be allowed to "call Pretrial Services multiple times a week from his landline to verify that he is at home by the start of curfew on non-work nights." ECF No. 61 at 18; *see also id.* at 5-6. Not only does PTS not have such a system in place to record those calls or determine their origin, but this proposal would allow the defendant to call in and then leave his home—violating curfew—without any concern that PTS would become aware of the deception. In fact, depending on the frequency and advance scheduling of the required calls, the defendant could even travel to Washington, D.C. or leave the continental United States in the intervening time. Random checks—whether via calls to the defendant's home landline during curfew hours or via GPS monitoring—are the only way to ensure compliance with the Court's conditions.

## IV. Conclusion

For the foregoing reasons, the Court should deny the defendant's motion.

                    Respectfully submitted,

                    MATTHEW M. GRAVES
                    UNITED STATES ATTORNEY
                    D.C. Bar Number 481052

By:        */s/ Michael M. Gordon*
                    MICHAEL M. GORDON
                    Florida Bar No. 1026025
                    Assistant United States Attorney
                    Detailee – Federal Major Crimes
                    United States Attorney's Office
                    For the District of Columbia
                    Telephone No. (813) 274-6370
                    michael.gordon3@usdoj.gov