```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA

   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 22-11
vs.                                )
                                   )
ZACHARY JOHNSON, et al.,           )  September 14, 2022
             Defendants.           )  4:23 p.m.
                                   )  Washington, D.C.
    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

                    TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE RICHARD J. LEON,
                UNITED STATES DISTRICT COURT SENIOR JUDGE

   *(Parties appearing via videoconference and/or telephonically.)*

**APPEARANCES**:

```
FOR THE UNITED STATES:    MICHAEL MATTHEW GORDON
                          Department of Justice-USAO
                          400 North Tampa Street
                          Tampa, FL 33602
                          (813) 274-6370
                          Email: michael.gordon3@usdoj.gov


FOR DEFENDANT JOHNSON:    GEORGE ELLIS SUMMERS
                          Federal Public Defender
                          Florida Middle
                          2075 West First Street
                          Fort Myers, FL 33901
                          (239) 334-0397
                          Email: ellis_summers@fd.org


FOR DEFENDANT RAJEWSKI:   ALLEN HOWARD ORENBERG
                          12505 Park Potomac Avenue
                          Potomac, MD 20854
                          (301) 984-8005
                          Email: aorenberg@orenberglaw.com


FOR DEFENDANTS FISCHER    CAROLYN STEWART
AND BOELLE:               1204 Swilley Road
                          Plant City, FL 33567
                          (813) 451-5753
                          Email: carolstewart_esq@protonmail.com
```

                        **(Appearances Continued)**

**<u>APPEARANCES (Continued)</u>:**

FOR DEFENDANT BRETT:

                          ELIZABETH ANN MULLIN
                          Federal Public Defender
                          For the District of Columbia
                          625 Indiana Ave, NW
                          Washington, DC 20004
                          (202) 208-7500
                          Email: elizabeth_mullin@fd.org

ALSO PRESENT:       CHRISTINE SCHUCK, Pretrial Services

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                          Official Court Reporter

*This hearing was held via videoconference and/or*
*telephonically and is, therefore, subject to the limitations*
*associated with audio difficulties while using technology,*
*i.e., static interference, etc.*

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

1              **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  Your Honor, we are in

3      Criminal Action 22-11, United States of America versus

4      Zachary Johnson, et al.

5              If I could have the parties identify themselves

6      for the record, beginning with the United States.

7              MR. GORDON:  Good afternoon, Your Honor.

8      Mike Gordon for the United States.

9              THE COURT:  Welcome.

10             THE COURTROOM DEPUTY:  Mr. Summers.

11             MR. SUMMERS:  Good afternoon, Your Honor.

12     Ellis Summers on behalf of Zachary Johnson, who is present.

13             THE COURT:  Welcome.

14             THE COURTROOM DEPUTY:  Mr. Orenberg.

15             MR. ORENBERG:  Yes.  Good afternoon, Your Honor.

16     Allen Orenberg on behalf of Mr. Dion Rajewski, who I just

17     spoke to, and he is logging on right now.

18             THE COURT:  Welcome.

19             THE COURTROOM DEPUTY:  Ms. Stewart.

20             MS. STEWART:  Yes, Your Honor.  Good afternoon.

21     Caroline Stewart here for A.J. Fischer and Brian Boele.

22             THE COURT:  Welcome.

23             THE COURTROOM DEPUTY:  And Ms. Mullin.

24             MS. MULLIN:  Good afternoon, Your Honor.

25     Elizabeth Mullin on behalf of James Brett, who is present on

1    the video.

2              THE COURT:  Welcome.

3              MS. SCHUCK:  And Christine Schuck with pretrial

4    services.

5              THE COURT:  Welcome.

6              Ms. Schuck, do you have any issues that you need

7    to raise today?  I might as well start with you while you

8    are there.

9              MS. SCHUCK:  Well, Your Honor, all defendants are

10   compliant, Your Honor.  Thank you.

11             THE COURT:  I am happy to hear that.

12             All right.  Let's start with the government.

13             Do you want to give me a little update,

14   Mr. Gordon, as to where things stand from your point of

15   view?

16             MR. GORDON:  Certainly, Your Honor.

17             We have been in the process of providing discovery

18   to all of the defendants.  I believe we have provided

19   discovery to all of the defendants.

20             I know some of them have expressed issues with

21   various aspects of combing through the systems that we use

22   to provide for that.  We have been trying to help each

23   defense counsel get what they need to evaluate the case.  We

24   are in plea discussions with some but not all of the

25   defendants.

1          I think we -- as far as I know, from speaking to

2     several defense attorneys, they're going to be asking for a

3     90-day continuance, and the government has no objection to

4     that.

5          THE COURT:  All right.  Let me ask you some

6     questions.  Have you been on this case since the beginning?

7     Mr. Gordon?

8          MR. GORDON:  I have not, Your Honor.  I joined

9     maybe two, three months ago.

10         THE COURT:  So who was on from the beginning,

11    Ms. Moore?

12         MR. GORDON:  That's correct.

13         THE COURT:  Where is she today?

14         MR. GORDON:  She is in another conference on

15    another January 6th case.

16         THE COURT:  Okay.  Well, you might not know the

17    answers to the questions I have, but I am going to need to

18    know the answers to these questions.

19         If there isn't a conspiracy charge, I am kind

20    of -- let's just say confused and uneasy about why these

21    five defendants are joined together.

22         Can you please explain to me how it is that these

23    five defendants are joined together without a conspiracy

24    charge?

25         MR. GORDON:  I can explain that their conduct is

1    all joined.  They are basically working together in a --

2    along with others, in a concerted manner, to do what we

3    call, like, a "heave-ho" at what is called "the tunnel" at

4    the lower west terrace of the Capitol, where there is a door

5    where there was a line of police officers trying to make a

6    stand there.  And a group of rioters, including these five

7    defendants, were using their bodies in sort of a concerted

8    effort to rock back and forth and push against the police

9    line.  And these five were all sort of associated.  In fact,

10   otherwise, they have a relationship outside of this; they

11   are all connected to the Proud Boys in one way or another.

12           I can't speak to why AUSA Moore and others chose

13   not to charge a conspiracy; I don't know that.  My

14   inclination is that because I don't think we have evidence

15   of a sort of preplan to breach the Capitol in this

16   particular way.  It's not like they joined together at a

17   moment before and came to an agreement that we -- the five

18   of us -- are going to work together to do this heave-ho

19   maneuver at this time.

20           They are not part of the larger Proud Boys

21   conspiracy case that is going to trial soon because they're

22   not sort of part of the Proud Boys' leadership.

23           THE COURT:  Indeed, how is the fact that they had

24   any relationship to the Proud Boys be relevant --

25           MR. GORDON:  It's not relevant to --

```
 1              THE COURT:  -- to their trial, if there was a
 2    trial?
 3              MR. GORDON:  Yes, Your Honor.
 4              So it's relevant in a couple of respects.  It's
 5    relevant to the 231 charge.  It's relevant to their intent
 6    to disrupt the official proceeding, and the fact they did
 7    that.  It's relevant to, you know, how they -- how they knew
 8    each other; why they were all in the same place as they were
 9    working together in that moment.  But they have been broken
10    out from the larger case because they are not part of that
11    leadership, not directing the effort of others.
12              THE COURT:  Explain how it's relevant to the 231
13    charge; I don't see that.  Explain that to me.
14              MR. GORDON:  Well, Your Honor, part of our theory
15    is that the conduct here not only disrupted the official
16    proceeding and the riot, but that that's what they were
17    intending to do.  So in some of the messages and the
18    communications leading up to January 6th there were sort of
19    discussions about --
20              THE COURT:  Messages between who and whom?
21              MR. GORDON:  Between some of these defendants.
22              THE COURT:  What do you have, text messages or
23    something like that?
24              MR. GORDON:  I would have to leave some of that
25    detail to AUSA Moore, Your Honor.
```

1          I certainly understand your concern.  Are you

2     considering that -- do you think it should be severed?  Is

3     that why you are asking about these five being together?

4          THE COURT:  Well, I am trying to anticipate

5     possible motions, among which is possibly severance.

6          For starters, I don't know Ms. Moore; I don't have

7     any -- never had a case with her before, or with you, for

8     that matter.  But AUSAs in this district more familiar with

9     this Court, are aware that, as a result of the largest FCPA

10    trial in U.S. history that was tried in my courtroom, with

11    six defendant that went for 18 weeks -- that's four and a

12    half months -- when that trial ended, I told the chief of

13    the criminal division in this U.S. Attorney's Office I will

14    no longer ever try a case with more than four defendants

15    because I don't think it's fair to the defendant.  It's not

16    Pollyannaish to think that jurors can keep straight the

17    evidence of six defendants over a lengthy period of time.

18    It's hard enough for the Court to do; I would not expect

19    jurors to be able to do that very easily, if at all.

20          So there is not going to be any trial in my

21    courtroom with more than four codefendants under any

22    circumstances.

23          In this case, if there isn't a common set of facts

24    or basis, legal basis, to keep them together, then I would

25    be very much inclined to grant a severance motion; maybe

```
 1    five separate trials.

 2            I am not going to allow the government to just

 3    blithely put together a case without a conspiracy charge

 4    that might be designed in such a way as to be prejudicial or

 5    harmful to defendants by being tried with other defendants.

 6    We'll have to wait and see; I don't know yet.

 7            I don't have any motion, obviously; you would know

 8    if I did.  I don't have any motion to sever at this stage.

 9    But I am concerned, at first blush here, of adding on

10    defendants -- do you plan on adding on any more defendants?

11            MR. GORDON:  No, Your Honor, we are not.

12            THE COURT:  Okay.  And, of course, I would be very

13    concerned about trying to introduce into evidence text

14    messages between the parties that you think might, in some

15    way, be inculpatory.  I don't know what they are.  I haven't

16    seen the evidence, obviously; I don't know what you have.

17            But I can tell you right now -- depending upon how

18    the text messages are drafted, these defendants aren't going

19    to be testifying against one another because they have a

20    Fifth Amendment right.  So what a particular text message

21    means, unless it's -- it may be in some kind of shorthand;

22    it may be in some kind of code language -- I don't know, I

23    haven't seen any text messages yet.  But depending upon how

24    it's written and how it's styled, you might be putting

25    yourself in a position where you are asking a jury to
```

1    speculate because nobody has testified or translated what

2    the text means -- you might be asking the jury to speculate

3    as to what it meant; I will not permit that, of course.

4         To me there are a lot of unknowns here.  It is

5    unfortunate Ms. Moore isn't here for that purpose, to answer

6    some of those questions.  But I can tell you to tell her

7    that I am concerned, especially about anything over four

8    defendants -- anything over four.  If we're going to have a

9    trial here, it would probably be at least two trials; I

10   wouldn't try one person probably.  It may be as many as five

11   trials.  So keep that in mind as you're doing your

12   negotiations behind the scenes with defense counsel.

13        MR. GORDON:  I understand, Your Honor.  I will

14   pass those concerns along to Ms. Moore.  If she's not

15   present at the next status, I will certainly --

16        THE COURT:  Let me assure you, she will be

17   present.  If I had known that she wouldn't be present here

18   today -- if I had known that she couldn't be here today, we

19   wouldn't have had this hearing.

20        MR. GORDON:  I understand, Your Honor.

21        THE COURT:  She will be at the next one.  You can

22   tell her for me I expect her to be here.  She is lead

23   counsel in this case; I expect her to be here.

24        Now, I have another question.  I couldn't help but

25   notice that Ms. Stewart is representing more than one

1    defendant; in this district, that is not done.  Once in a

2    while a husband-wife situation may permit that, but there is

3    obviously a potential conflict of interest issue.

4            Have you had discussions with her?

5            I am not asking you to tell me what they were.

6    Have you had discussions with her about possible conflict of

7    interest issues?

8            MR. GORDON:  We have raised those concerns, Your

9    Honor.  We have raised them on multiple occasions.

10           THE COURT:  Good.  Well, then I will give her a

11   chance to address them when I get to her.  I just want to be

12   sure the government is not only focused on that, but that it

13   has raised those concerns.

14           Do you have any other issues you would like to

15   raise?

16           MR. GORDON:  No.  Not at this time, Your Honor.

17           THE COURT:  Very good.

18           THE COURTROOM DEPUTY:  Your Honor, forgive me for

19   interrupting.  I would like to let you know Mr. Rajewski has

20   just joined us.  Mr. Dion Rajewski has just joined us.

21           THE COURT:  Who is his counsel?

22           THE COURTROOM DEPUTY:  It is Mr. Orenberg, Your

23   Honor.

24           THE COURT:  Mr. Orenberg, is your client waiving

25   the period where he wasn't present --

```
 1              MR. ORENBERG:  Yes, he is, Your Honor.
 2              THE COURT:  Is he waiving any objections to
 3      commencing this hearing when he wasn't present?
 4              MR. ORENBERG:  Yes, Your Honor.  On behalf of
 5      Mr. Rajewski, he will waive his presence for approximately,
 6      I guess, about the first 15 minutes of this hearing.
 7              THE COURT:  Why don't we start with you, then.
 8              What is your assessment of where things stand
 9      right now from your client's point of view?
10              MR. ORENBERG:  Well, Your Honor, we agree -- I did
11      have a conversation with Ms. Moore yesterday.
12              I concur with Mr. Gordon's representation to the
13      Court that we set this over for another 45 to 90 days to
14      allow continuing discovery -- to review continuing discovery
15      and to have ongoing discussions.
16              THE COURT:  All right.  At the moment, do you have
17      any expectation that you will be filing any motions in this
18      case?
19              MR. ORENBERG:  Yes, Your Honor.  Yes, I do.
20              I will be filing a motion for severance.
21              THE COURT:  Okay.
22              MR. ORENBERG:  There may be a motion to suppress
23      statements.
24              THE COURT:  All right.
25              MR. ORENBERG:  Those are the Rule 12 motions that
```

1    I have in mind at this point.  I am not sure if the Court is

2    inquiring about motions in limine as such --

3              THE COURT:  No.  No, not at this point.  I was

4    just trying to get some sense of what you anticipated down

5    the road if this isn't resolvable with some kind of a plea.

6    That's all I was trying to do.

7              MR. ORENBERG:  Okay.  Yes, Your Honor.

8              THE COURT:  Anything else you would like to raise

9    at this point?

10             MR. ORENBERG:  No, Your Honor.  No, thank you.

11             THE COURT:  Okay.  Very good.

12             I guess we'll go next to -- Mr. Summers for

13   Mr. Johnson -- representing Mr. Johnson.

14             MR. SUMMERS:  Yes, Your Honor.

15             Your Honor, we would concur with the request for a

16   continuance of 60 to 90 days.  We are still completing our

17   investigation and we are continuing to review the discovery,

18   although we have been through a lot of it at this point,

19   Your Honor.  But we do still have a few things we're working

20   on.

21             As far as motions go, I have been working on a

22   motion for severance; I actually had discussed that with

23   Ms. Moore, and those conversations are maybe -- I probably

24   need to touch base with her again.  She did raise one issue

25   that we were investigating.  But, Your Honor, that's the

1    only motion I am currently working on at this time.

2              THE COURT:  Okay.  Very good.

3              That should get us to Ms. Stewart for Mr. Fischer

4    and Mr. Boele.

5              MS. STEWART:  Yes, Your Honor.

6              So, first, I will address your earlier point about

7    conflict of interest; but I would point out that Mr. Boele

8    is the father of the other defendant, Mr. Fischer.

9              THE COURT:  His father?

10             MS. STEWART:  Yes, Your Honor.  He is not his

11   biological father, but he is his father.

12             THE COURT:  Through marriage?

13             MS. STEWART:  Yes.

14             THE COURT:  Okay.  All right.

15             MS. STEWART:  We have had discussions, conflict of

16   interest -- conflict of interest counseling going back

17   starting when I took Mr. Boele's case when he was -- his

18   appearance down here in Tampa, Florida.  And I had conflict

19   of interest counseling with both defendants, and they have

20   each agreed there is no conflict of interest.  However, if

21   there is going to be one, we would raise it; and they

22   understand that they could waive or fire me and get new

23   counsel.

24             Right now we don't see any conflict of interest;

25   we have gone through the counseling.  And I can show each

1    received, on letterhead, conflict of interest, written

2    documentation that's required; so we have done that.

3         We will be filing a motion to sever. I had

4    mentioned this to Mr. Gordon, and he already said the

5    government opposes. I don't know why. And I will bring to

6    a point that, as far as conspiracy, Mr. Boele was not even a

7    member of the Proud Boys.

8         What you have is a group of five persons from

9    Tampa, who -- Mr. Boele didn't even know the other

10   defendants before he went to the Capitol. He met them upon

11   his arrival through Mr. Fischer, his son. He didn't join

12   the Proud Boys until after the events at the Capitol that

13   day.

14        But the government has decided: Here's five guys

15   from Tampa -- (audio indiscernible) members of the Proud

16   Boys, let's put them together in the case. So that's the

17   only nexus between them, is being members of a local Proud

18   Boys chapter with Mr. Boele -- and not until afterwards.

19        As far as -- (audio indiscernible).

20        THE COURT: You are breaking up, ma'am. I don't

21   know if you can hear me --

22        MS. STEWART: I'm sorry.

23        THE COURT: -- but you are breaking up, ma'am. I

24   can't quite hear what you are saying.

25        MS. STEWART: Okay. Is that clearer now, Your

1    Honor?

2              THE COURT:   That was just then, right now, better.

3              MS. STEWART:   I think it could be my rural

4    internet; I think I am on my good internet.

5              So we will be filing a motion to sever not only

6    Mr. Boele from the other four, but both defendants from each

7    other, and from the others.   There was no joint endeavor, no

8    joint action.   The idea that there could even be a

9    conspiracy, we would consider something at this point that

10   would be a made-up story; there is nothing.

11             As far as who was on a text chat and whether they

12   saw messages or not, we certainly might move to have

13   something suppressed based on some of the search things that

14   occurred.

15             But as far as the civil disorder, we will be

16   moving to have that dismissed also, as well as some of the

17   other charges.   So that's where we stand, Your Honor.

18             THE COURT:   In terms of severance, you would be

19   seeking a severance from all of the other defendants except

20   for his son?

21             MS. STEWART:   No.   I would seek to sever it all.

22   I want each of them severed from the other.   They -- if we

23   want to leave them together, we could leave the two of them

24   together; but, as a minimum, severed from the other

25   defendants.

1          THE COURT:  They just recently added Mr. Boele to

2      the case.

3          MS. STEWART:  Right.

4          THE COURT:  Has he been arraigned?

5          MS. STEWART:  Yes, Your Honor.

6          We went through all of -- (audio indiscernible.)

7      He and James Brett were arrested at the same time and added

8      to this case at the same time, somewhere around June 3rd.

9      Yes, June 3rd, Your Honor.

10          THE COURT:  Okay.  All right.  So are you in

11      agreement on the 60- to 90-day continuance?

12          MS. STEWART:  Yes, Your Honor.

13          I would lean toward the 90 day.  We did not

14      receive Mr. Boele -- I wouldn't even call it a full

15      discovery delivery until last week; there was a prior

16      attempt, it didn't get posted.  It didn't come through.  So

17      I would say the problem is Relativity; we keep getting

18      booted off of it, (indiscernible) disappearing.  I would say

19      90 days would be our preference.

20          THE COURT:  All right.  Do you have anything else

21      you would like to raise today?

22          MS. STEWART:  Not off the top of my head, Your

23      Honor; I think we have pretty much covered it.

24          THE COURT:  Thank you.

25          I guess Ms. Mullin is next.

1          MS. MULLIN:  Thank you, Your Honor.

2          Elizabeth Mullin on behalf of James Brett.

3          Your Honor, as the Court could probably

4     anticipate, we will join the chorus and file a motion to

5     sever under Rule 8 and Rule 14 of the due process clause.

6          And I guess I was just wondering, given how the

7     Court's ruling would influence scheduling, if the Court

8     would like to set a deadline for filing of motions to sever.

9     I would be happy to comply with the deadline imposed by the

10    Court.  I try to file them in the due course when motions

11    are due, but maybe this is a motion that we could file prior

12    to the rest of the motions.

13          I also intend to file a motion to dismiss the

14    civil disorder charge and a motion related to the 1752

15    offenses.

16          With respect to Mr. Brett, Your Honor, I have one

17    small issue to raise.  There is a consent motion.  I will

18    make it now orally.  If the Court would like me to put it in

19    writing, I am happy to do so.

20          Mr. Brett is currently on GPS monitoring.  At the

21    outset of this case he was given the option of GPS

22    monitoring or a curfew.  And he chose GPS monitoring because

23    he didn't know if his work would conflict with the curfew.

24    However, it has come to pass that the GPS monitoring is more

25    onerous than a curfew would be.  He has high-school-aged

1    kids and they actually, frankly -- and I have

2    high-school-aged kids, so I can totally understand this --

3    are embarrassed when Mr. Brett shows up to school with the

4    ankle monitor.  It's giving him and his kids anxiety when he

5    attends sports, games, and things like that.

6              THE COURT:  How do they even see it?

7              MS. MULLIN:  I guess it's quite bulky.  He lives

8    in Florida, so maybe he's not always wearing long pants.

9              THE COURT:  Are you in Florida?  Are you located

10   in Florida?

11             MR. BRETT:  Yes, Your Honor.  Clearwater.

12             THE COURT:  No, no.  I am talking about your

13   counsel, Ms. Mullin.

14             MS. MULLIN:  No.  I am here in Washington, D.C.  I

15   am a member of the Federal Public Defender, Your Honor.

16             THE COURT:  Okay.  You have never had a case

17   before me, so I didn't --

18             MS. MULLIN:  Yes, Your Honor.  Nice to appear

19   before you.  I am relatively new to the office.

20             That said, I also have high-school-aged kids; I

21   can understand where Mr. Brett is coming from.

22             Additionally, he can't swim with them, which is

23   just something that they enjoy doing together.

24             Given that he was offered the alternative

25   condition of a curfew, and it's really to comply with that

1    and the government consents, we would ask the Court to issue

2    an order today authorizing him to be --

3            THE COURT:  See, this just shows your inexperience

4    with this court.

5            MS. MULLIN:  Okay.

6            THE COURT:  I don't do any changes in conditions

7    of release that are not in writing and submitted with the

8    government's position also in writing.

9            If you want to make a request, you have got to

10   file a motion; the government has to respond to it.  It's

11   not just your representation that the government doesn't

12   oppose, that's not good enough.

13           MS. MULLIN:  Okay.  Very well, Your Honor.  I am

14   happy to do that.  The government is here and would

15   indicate, I believe, that they don't oppose --

16           MR. GORDON:  That is correct, Your Honor.  But I

17   am happy to put that in writing.

18           MS. MULLIN:  I apologize to the Court for not

19   knowing the Court's proceeding.

20           THE COURT:  You will learn.

21           MS. MULLIN:  Indeed.

22           THE COURT:  You will learn.

23           Do you have any other issues you would like to

24   raise?

25           MS. MULLIN:  No, Your Honor.

1          THE COURT:  Very good.

2          All right.  I will set a hearing for 90 days from

3    now, December 14th, 4:00.

4          The Court will find in the interest of justice the

5    Speedy Trial Act will be waived between now and then so the

6    parties can continue to review the evidence that's been

7    produced in discovery and continue to have whatever

8    discussions they wish to have with regard to a resolution of

9    this case short of a trial.

10         MR. ORENBERG:  Your Honor.

11         THE COURT:  Mr. Orenberg?

12         MR. ORENBERG:  Your Honor, I would hate to

13   interject on this.  But would it be possible to have that

14   hearing a little bit earlier in the day.  I have a personal

15   matter at 5:00 that day that I would like to attend to.  I

16   want to make sure --

17         THE COURT:  I will move it back to 3:00.

18         MR. ORENBERG:  Thank you, Your Honor.

19         THE COURT:  In the meantime, the parties don't

20   have to file any motions prior to that.  The case might be

21   resolvable in some way, shape, or form between now and the

22   14th of December, so we'll have a status conference.

23         I am not going to set any deadlines.  At that

24   point, I will, however.  Depending upon where we stand, I

25   will entertain requests for a deadline to file motions for

1      severance on December 14th.

2              Any other issues?

3              MR. GORDON:  Not from the government, Your Honor.

4              THE COURT:  Any other issues for the defense?

5              (No audible response.)

6              THE COURT:  Hearing nothing, the Court calls the

7      case in recess.

8              Have a nice day, counsel.

9              MR. ORENBERG:  Thank you, Your Honor.  You too.

10             MS. STEWART:  Thank you.

11             MR. SUMMERS:  Thank you, Your Honor.

12             (Whereupon, court adjourned, 4:51 p.m.)

13                      * * * * *

14                      **<u>CERTIFICATE</u>**

15             I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
       certify that the foregoing constitutes a true and accurate
16     transcript of my stenographic notes, and is a full, true,
       and complete transcript of the proceedings to the best of my
17     ability.

18             This certificate shall be considered null and void
       if the transcript is disassembled and/or photocopied in any
19     manner by any party without authorization of the signatory
       below.

20

21         Dated this 23rd day of November, 2022

22         /s/ Elizabeth Saint-Loth, RPR, FCRR
           Official Court Reporter
23

24

25