## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CR-00011 (RJL) |
| | ) | |
| ALAN FISCHER III, | ) | |
| BRIAN BOELE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT MOTION TO SEVER CO-DEFENDANTS BRETT AND RAJEWSKI

COMES NOW the Defendants, ALAN FISCHER III, and BRIAN BOELE joined together in this motion, and by and through undersigned counsel, respectfully move this Court pursuant to Rules 8 & 14(a) of the Federal Rules of Criminal Procedure, and the Sixth Amendment of the United States Constitution to order their severance for trial from Co-Defendants Dion Rajewski and James Brett. The Government opposes. Mr. Fischer and Mr. Boele state the following in support of this request:

## I.      BACKGROUND AND FACTS

The charges from this case arise from the events that took place on January 6, 2021 at the U.S. Capitol. Mr. Fischer and Mr. Boele were indicted on serious allegations that involve separate counts for felonies and misdemeanors on the U.S. Capitol grounds. ECF No. 54. The Defendants deny guilt for the crimes alleged. No trial date is set.

Because five defendants created trial issues, discussion of severing defendants arose during the March 30, 2023 status conference. The Court's verbal order at the status conference was followed by a minute order that directed all *pretrial motions* to be filed by June 30, 2023. A Co-Defendant requested a continuance for the due date which was granted.

Defendant Johnson by his attorney and AUSAs Gordon and Lederer signed a plea deal, and on June 20, 2023 requested a plea hearing be set. ECF No. 115.

**SUMMARY**

The government joined the group of five defendants not because of any concerted action, joint endeavor, joint transaction, proximity on January 6, 2021, close friendship, common scheme, plan, joint act, or conspiracy, but rather because four of the five defendants were members of the Proud Boys' Trigger City Chapter in the Tampa Bay area before January 6, 2021. The joinder was improper. The government, and specifically the FBI, have worked diligently from before January 6, 2021 to misrepresent the Proud Boys as extremists, domestic terrorists, white nationalists, and even a militia. All is untrue.  The joinder for the Indictment was strictly to create a small target that a big government cannon could hit with one blast before a jury audience that has been propagandized by the government and media into false stereotypes about the Proud Boys.

This is a unique case where severance is for good cause and in the interests of justice because the government holds responsibility for venire prejudice in D.C. That prejudice will never subside as long as the DOJ has money to keep prosecuting every Proud Boy who travelled to D.C. The joinder in this case is a backdoor way for the government to obtain a conviction through guilt by association and continuing propaganda that inflames existing prejudice in D.C. For example, google analytics show that D.C. leads the nation - and state over state - when it comes to trials and search terms entered for sedition, Enrique Tarrio, Proud Boys, and other related search terms. The searches return propaganda with algorithms delivering negative stories with false narratives.

Leaving the above aside, these cases are video and incident by incident specific. Asking a jury to sort out and recall the distinctions between co-defendants who did not act together regardless of any coincidental physical proximity will create prejudice and transfer allegations of

guilt from one defendant to another in the minds of jurors. From the juror's perspective the standout is that four out of five defendants were Proud Boy members on January 6, 2021, the Proud Boys' leader and his co-defendants were recently convicted of seditious conspiracy, and the FBI photographed and collected Proud Boys' paraphernalia such as polo shirts and challenge coins as if owning such items is a crime. Many items seized were never associated with Defendants' presence in D.C. in January 2021, but they were taken as evidence none the less.

The government has relentlessly demonized the Proud Boys. There is no respite in D.C. for any Proud Boy going on trial. The bias will be compounded for joinder of Proud Boys who did not act together in any crime on January 6, 2021. The government knew from the outset that the mere act of placing a group of Proud Boys together for a single trial was a strategy for obtaining a conviction solely by conveying membership in the demonized Proud Boys.

The recently terminated AUSA in this case used the Proud Boys' trial with the (Cuban American) leader Mr. Tarrio, to advertise Mr. Fischer by-name (and other Proud Boys) as "tools" of seditious conspiracy. It would be highly prejudicial to allow the improper joinder to continue since the media is standing by for "the tools trial." The government invented a false narrative against the co-defendants in this case to convict other Proud Boys where Mr. Fischer and Mr. Boele had no ability to counter the false charges that now remain in social media and elsewhere on-line.

The "tools" story was an unprofessional, cheap shot, fantasy tale that the jury could not see through - or did not wish to see through.  Despite all the government might of Form 702s and every kind of global, invasive surveillance and search available, not a single fact supported the "tools" story. Yet it will be on google forever and any continued joinder for trial is a guaranty for defamation and conviction.  Residents in DC search at a higher rate than anywhere else nationally

for January 6-related terms, according to test analytics. Repeated exposure and trial outcomes show that while a few juries have acquitted on a very small number of counts, the DOJ conviction rate is near 99% for January 6 counts. Rather than a joint trial for the "tools" group that the government created for prejudicial effect, the trials should be severed. The government should have to prove its case for each Defendant without the spectacle and prejudice of the government-created group of "tools."

The "tools" story lingers and will linger. There are local D.C. media personalities whose livings rely on January 6, 2021 reporting to this day. For weeks the Tarrio case was splashed across the internet thanks to google algorithms that made it pop-up unrequested.  There is no way this group with Proud Boys association can be joined for a single trial and then receive a fair and impartial verdict. They were already tried in abstentia in the Tarrio case with allusions to unindicted co-conspirators - and without due process - by the former AUSA for this case.

The government has been defaming the Proud Boys as a group with the assistance of a very eager media, especially in D.C.. Many defendants' motions now emphasize that they were not a member of the Proud Boys or Oath Keepers. They know in D.C. that jurors have been conditioned (i.e., propagandized) to consider the Proud Boys a criminal gang if not outright terrorists.

Because of the above, it is in the interests of justice and with good cause shown that the movants here be severed from Mr. Brett and Mr. Rajewski to mitigate some prejudice and for a fair trial.

For the co-defendants, the Indictment's charges are distributed as follows:

Dion Rajewski Indicted on 5 counts:

| | | |
|---|---|---|
| Sections 231(a)(3) and 2 | (all in same count 1) | Felony |
| Section 1752(a)(1) and (b)(1)(A) and 2 | (Count 5) | Felony |
| Sections 1752(a)(2) and (b)(1)(A) and 2 | (count 10) | Felony |
| Section 1752(a)(4) and (b)(1)(A) and 2 | (count 12 w/Johnson) | Felony |
| Title 40, Section 5104(e)(2)(D) and 2 | (count 14 - all) | Misdemeanor |

Brian Boele and Brett James Indicted together on the following:

| | | |
|---|---|---|
| Sections 231(a)(3) and 2 | (all in same count 1) | Felony |
| Section 1752(a)(1) and 2 | (Count 7 - both) | Misdemeanor |
| Section 1752(a)(2) and 2 | (Count 11 - both) | Misdemeanor |
| Title 40, Section 5104(e)(2)(D) and 2 | (Count 14 - both) | Misdemeanor |

AJ Fischer Indicted on the following Counts:

| | | |
|---|---|---|
| Sections 231(a)(3) and 2 | (all in same count 1) | Felony |
| Sections 111(a)(1) and (b) and 2 | (Count 3) | Felony |
| Section 1752(a)(1) and (b)(1)(A) | (Count 6) | Felony |
| Section 1752(a)(2) and (b)(1)(A) | (Count 9) | Felony |
| Section 1752(a)(4) and (b)(1)(A)) | (Count 13) | Felony |
| Title 40, Section 5104(e)(2)(D) and 2 | (count 14 - all) | Misdemeanor |
| Title 40, Section 5104(e)(2)(F) and 2 | (Count 15) | Misdemeanor |
| Sections 231(a)(3) and 2        same charge count 1 | (Count 16) | Felony |

Zach Johnson (Plea forthcoming)

| | | |
|---|---|---|
| Sections 231(a)(3) and 2 | (all in same count 1) | Felony |
| Sections 111(a)(1) and (b) and 2 | (count 2) | Felony |
| Sections 1752(a)(1) and (b)(1)(A) and 2 | (count 4) | Felony |
| Sections 1752(a)(2) and (b)(1)(A) and 2 | (count 8) | Felony |
| Section 1752(a)(4) and (b)(1)(A) and 2 | (Count 12 w/Dion) | Felony |
| Title 40, Section 5104(e)(2)(D) and 2 | (count 14 - all) | Misdemeanor |

## II.   <u>LEGAL STANDARD</u>

**The Federal Rules of Criminal Procedure support severance to ensure a fair trial**. The defendant bears the burden of showing why severance s needed.

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Two federal Rules cover the topic of severance.

Federal Rule of Criminal Procedure 8(a) provides: "two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Rule 8(b) provides that "two or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

Joinder is appropriate if there is "a logical relationship between the acts or transactions." *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984). The Court reviews the indictment and the Government's pretrial evidence to evaluate that relationship. *See United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006).

Even if joinder is proper under Rule 8(b), Rule 14(a) allows the Court to sever a defendant's trial if joinder "appears to prejudice a defendant or the government." Fed. R. Cr. P. 14(a). Prejudice arises where there is "a serious risk that a joint trial [will] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

*Zafiro*, 506 U.S. at 539. But "severance is not required even if prejudice is shown." *United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021).

The tailoring of appropriate relief is left "to the district court's sound discretion." *Zafiro*, 506 U.S. at 539. the Court may apply "less drastic measures, such as limiting instructions . . . to cure any risk of prejudice." *Id.* For these reasons, Defendants under Rule 14 bear a "heavy burden," *United States v. Williams*, 507 F. Supp. 3d 181, 196 (D.D.C. 2020).

Thus, given defendants charged jointly in an indictment, the district court must weigh the threat of a finding by the jury of guilt by association:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a co-defendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro*, 506 U.S. at 538 (citing *Kotteakos v. United States*, 328 U.S. 750, 774-775 (1946).

## III.   DISCUSSION / ARGUMENT

### A.  Rule 8 Joinder was Improper and Mr. Boele and Mr. Fischer Should be severed from co-defendants Rajewski and Brett.

Just because some defendants are charged together in the same counts does not mean there was a common transaction or act. In this case, there were no plans and no acts that were done together other than being on the west side of the U.S. Capitol. The government could for all intents and purposes have picked names out of a hat to join together if the standard is location-based. That is in fact how sometimes the government is charging civil disorder where anyone who stood on the lower west terrace was or will likely be charged with Section 231(a)(3), or if they went in the building, with Section 1512(c)(2).

There was no cause for joinder other than for over a year the FBI's JTTF in the Tampa area abused domestic terrorism inquiry and investigations where they came up with nothing to show any commonality to join the Defendants besides being in the same Proud Boys chapter. Mr. Boele was not even a Proud Boys' member by the time of the events at the U.S. Capitol on January 6, 2021.

Mr. Boele went to D.C. to be with his son, Mr. Fischer. They did not travel on the same flight or stay at the same hotel. But they spent the evening of January 5, 2021 together. They met in the morning to spend the day together on January 6, 2021. They prayed with and marched with the Proud Boys, who were on the mission to deter by presence any violent Antifa and BLM assaults on rally-goers (which had happened in the past). The Proud Boys goal for the night of January 6, 2021 was to have a party with live music, food, and drink.

Mr. Boele did not know Mr. Rajewski or Mr. Brett prior to travel to D.C. He met Mr. Rajewski for the first time on the evening of January 5, 2021. He did not seek to be with Mr. Rajewski or Mr. Brett. Nor did he seek to accompany anyone but his son on January 6, 2021. Any proximity to Mr. Rajewski or Mr. Brett on January 6, 2021 was coincidence. Mr. Fischer and Mr. Boele tried to text each other a few times while on the west side of the Capitol when they were separated.

The government could have joined Mr. Boele and Mr. Fischer with any three strangers from the west terrace if the standard was to share a common charge such as civil disorder where nothing in the indictment says what anyone did to impede any police, and there was no obstruction of commerce at that same time that any police were responding to anything. The charges lack any facts to confer any rational thought of specificity and proper joinder. Each Defendant's charge for civil disorder requires proof of his specific acts, and intent to act to impede officers. There can be

no false assumption that there was any shared intent, plan, or goal from the non-existent facts in the indictment. Yet a made-up set of concerted acts is what the government will convey to any jury by making this case a "Proud Boys" case. This is an improper joinder.

Mr. Fischer and Mr. Boele worked on nothing together with Mr. Brett and Mr. Rajewski on January 21, 2021. There was no planned act or any series of acts other than a march around D.C. where Defendants Fischer and Boele saw Defendants Rajewski and Brett at the food truck stop. The government included almost no facts about any acts or the charges in the indictment and expect the Court to continue with the unreasonable and unfair joinder because the government charged all Defendants in two counts. It cannot make facts up here, despite the false narrative provided in the Tarrio trial about a group of "tools."

There was no common, shared motive in presence at the Capitol, and any attempt to state one is more of the same when it comes to false narratives. For any actions or movement at the U.S. Capitol by Messrs. Boele and Fischer, there was no connection or coordination with Defendants Rajewski and Brett. The only seeming connection was by Johnson who was named suspicious actor "goggles man" by external groups, and who made the effort to pull and tug at Mr. Fischer for CCTV camera shots.

Because the government's joinder of the Defendants appears only for the express purpose of solidifying, increasing, and manipulating existing prejudice against Proud Boys because of social association, and such prejudice is highly likely to cause an unfair trial if all the co-defendants remain joined, then it will be just for the Court to sever Mr. Boele and Mr. Fischer from Mr. Rajewski and Mr. Brett.

**B.  The Court should Sever Mr. Boele and Mr. Fischer from Mr. Rajewski and Mr. Brett under Rule 14 Because of the High Likelihood That a Jury Will Prejudice Them Based on Proud Boys Association and Conduct of their Co-Defendants.**

Spill-over and transference of evidence in the minds of jurors is more likely than not in a case where disparate acts for multiple crimes make a joint trial similar to a dense book or movie with four storylines and uncounted branches. If this were a bank robbery with four group members, then each person's alleged role in the crime would be simpler to track. Here, the alleged crimes are disparate and contain many elements; and each requires proof of acts and "knowing" or "intent." Groups trials are regularly taking weeks and it approaches being unreasonable to expect jurors to remember and separate who allegedly did what and when.

If the Co-Defendants remain joined and Mr. Johnson's plea is accepted by the Court, as shown on Page 4 supra, there are seventeen counts where the government has to show the intent and prove the elements separately for the four co-defendants. For the Section 1752 restricted area charges, the government has to prove there was any area restricted for the protection of the Vice President, and then attempt to show each defendant knowingly entered restricted grounds with notice, without lawful authority, and knowing the act was criminal. To date, no trial evidence has shown the west side of the capitol was restricted under Section 1752 for a Vice Presidential scheduled outdoor visit, yet every defendant has been convicted in jury trials - especially group jury trials. In this case, defendants are being forced to shoulder a large financial burden where Mr. Rajewski and Mr. Brett should not have been joined with Defendants Fischer and Boele.

Further, because he has so many charges as the government chose to pile on with the same alleged act being charged in the majority of counts, Mr. Fischer is not going to abbreviate his case for the convenience of co-defendants. It prejudices and opens the door to spill-over for Mr. Fischer to have disconnected co-defendants who must extend any trial's time because their cases and

charges must be defended distinctly from Mr. Fischer's defense. And because two counts - with no specificity and acts - charge all Defendants jointly, the potential for an unfair spill-over conviction on those counts is very high. Adding in the government's intended reliance on these Defendants as "tools" of those convicted of seditious conspiracy, the chance for spill-over and prejudice increases exponentially. The joinder is for the benefit of the government.

In lengthy trials, there is juror fatigue and boredom, as well as resentment that they have to miss work and normal daily activities. Separate trials of three to four days upon severance will avoid spill-over and any inability of jurors to keep each Defendant's case in its own mental bin. There is no easy compartmentalization for a group with individual counts and no acts in concert. A limiting instruction will not cure resentment and prejudice.

There is another unfairness to consider for continued joinder, and that is cost for defendants who do not have public defenders. For out of town defendants and even pro bono attorneys, the hotel costs, taxis, and meals in D.C. are very expensive. The cost for a two to three week trial within D.C. becomes prohibitive. The taxpayers foot the bill for AUSAs and witnesses who come from outside D.C. The Court does not have to consider this, but the Defendants humbly ask for consideration because there were no joint actions or joint goals among the Co-Defendants.

## IV.   **CONCLUSION**

Because the most effective way to prevent the certain prejudicial spillover effect is to have defendants answer directly to the evidence relevant to them as individuals, and where there was no concerted effort, the Court should sever Mr. Rajewski and Mr. Brett from Mr. Fischer and Mr. Boele's case.

Wherefore, for good cause shown, and for any other reasons the Court may decide, Mr. Fischer and Mr. Boele request that the Court issue the proposed order  for severance.

Dated July 25, 2023                              Respectfully submitted,

                                                 /s/ Carolyn A. Stewart
                                                 Carolyn A. Stewart, D.D.C. Bar No. FL0098
                                                 Defense Attorney
                                                 Stewart Country Law PA
                                                 1204 Swilley Rd.
                                                 Plant City, FL 33567
                                                 Tel: (813) 659-5178
                                                 Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

On this 25th day of July 2023, a copy of the foregoing was served upon all parties as

forwarded through the Electronic Case Filing (ECF) System.

                                                 /s/ Carolyn A. Stewart
                                                 Carolyn A. Stewart
                                                 Defense Attorney