UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 1:22-CR-00011 (RJL) |
| ) | |
| ALAN FISCHER III, ) | |
| BRIAN BOELE, ) | |
| ) | |
| Defendants.  ) | |

**DEFENDANTS' REPLY TO GOVERNMENT RESPONSE OPPOSING DISMISSAL AT ECF NO. 139**

COMES NOW the Defendants, ALAN FISCHER III, and BRIAN BOELE, by and through undersigned counsel, pursuant to Fed R. Crim P. Rule 47, Local Court Rules for Motion practice, and the Reply date ordered by this Court; and respectfully submit their joint reply in support of their original Motions at ECF No's. 131 and 135; with this Reply to the Government's single Response at ECF No.139 to their distinct motions; and move this Court to grant their motions at ECF No's. 131 and 135. Mr. Fischer and Mr. Boele state the following in support of this joint Reply:

**I.      BACKGROUND AND FACTS**

The government filed a single Response at ECF No. 139 (herein referred to as the Response) to the motions filed by Mr. Boele and Mr. Fischer at ECF No. 131 and ECF No. 135.

The only overlapping charges for Mr. Boele and Mr. Fischer in the Second Superseding Indictment at ECF No. 54 are Count One, 18 U.S.C. § 231(a)(3) Civil Disorder, and Count 14, ((Disorderly Conduct in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, Section 5104(e)(2)(D) and 2)).

In fact, all the Defendants, including Mr. Johnson, Mr. Rajewski, and Mr. Brett were charged without any specificity as to what each was accused of doing in Counts One and Fourteen, which require individual, overt acts. The counts do not specify any individual acts and subsequently do not include any specificity as to who was aided and abetted, and how.

The law does not require those "aided and abetted" to be charged, but the identity of who was aided and abetted, and how, are essential facts in mounting a defense and precluding double jeopardy. The prevalent caselaw, where *some circuit courts* claimed that aiding and abetting does not require detail, involved conspiracies and crimes under the Hobbs Act, which make aiding and abetting self-explanatory (for e.g., a narcotics ring), and not the crimes charged in the Indictment at ECF No. 54 that require specific individual acts and individual intent.

The government apparently has been working overtime to falsely allege a joint endeavor where none existed. For example, frivolous allegations made elsewhere by the government that Mr. Rajewski texted Mr. Boele do not correlate to texts on Mr. Boele's phone.

The government and Mr. Johnson signed a plea deal that eliminated Count One, Civil Disorder, and all charges except for a single count of simple assault Section 111(a) that was individually committed by Mr. Johnson.

While the government alleges Mr. Johnson acted as Proud Boy on January 6, 2021, he wore tactical gear despite Proud Boy leadership's admonition not to do so, and wore insignia for the 3%er group. No Form 302's or Form 1023s from any agency regarding him have been provided to co-defendants.

The government's Response at ECF No. 139 contains incomplete or inaccurate representations of applicable case law; and makes the false assertion that the government does not

need to provide anything more in an indictment than a recitation of the statute and date of the alleged offense as the standard for specificity and statement of a crime.

The government focuses almost exclusively on responding to the motion to dismiss Count One, Civil Disorder, and ignores the other counts – with the claim that it owes no facts.

The government did not address that Count 16 for Mr. Fischer is a duplication of Count One, with no facts alleging he was involved in one civil disorder, let alone two civil disorders.

## II.    LEGAL STANDARD

The motions at ECF No. 131 and 135 outlined the legal standards for an indictment. They contained the actual language of Rule 7 of the Federal Rules of Criminal Procedure that provides: "the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . " Fed. R. Crim. P. 7(c)(1). (ECF No. 31 Motion at 9; similarly, in ECF 135 at 10). The government attempts to downplay this Federal Rule by presenting "*only*" as a qualifier, as if that lessens the requirement to provide all essential facts for the offense charged. The Response incorrectly makes the legal conclusion - in contradiction of Fed. R. Crim. P. 7, the U.S. Supreme Court, and Circuit caselaw - that recitation of the statute with a date suffices for providing essential facts.

The original Motions at ECF No. 131 and No. 135 additionally stated the binding law that "A defendant may move to dismiss the pleadings on the basis of a "defect in the indictment or information," including a "lack of specificity" and a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii),(v); and "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell v. United States*, 369 U.S. 749, 764 (1962).

The Motions included the binding law overlooked in the Response that "The government must state the essential elements of the crime and allegations of 'overt acts [constituting the offense] with sufficient specificity.'" *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995). (Motions, ECF No. 131 at 10; ECF No. 135 at 14). The Motions included: The indictment must be **plain, concise, and clear as to the facts of the offense charged**. Fed. R. Crim. P. 7(c)(1).

### III.   DISCUSSION / ARGUMENT

**Because the government failed to provide specificity with facts that state a crime where Mr. Boele and Mr. Fischer can defend without surprise or unfair prejudice at trial while also precluding double jeopardy, the Court should grant the motions at ECF No. 131 and ECF No. 135 and dismiss Counts 1, 3, 6, 7, 9, and 13 - 16** as charged against the Defendants individually. Counts One and Fourteen include both Mr. Boele and Mr. Fischer, where the other counts were addressed individually in the separate motions at ECF No's. 131 and 135.

The caselaw makes clear that only when a statute is inherently informative about the crime committed when supplemented by a few facts, is the standard for the indictment met. The *Hudson* case in the Motions at ECF No. 131 and No. 135 clarify that specific facts are essential to ensure that conduct outside the reach of the statute is not swept into the indictment.

Because the government provided only partial and misrepresentative statements of the law, all counts should be dismissed with prejudice, <u>*particularly in consideration of the government's false allegations that*</u>:

(1)  The riot ((that was declared by the D.C. Metropolitan Police Department (MPD)) outdoors caused Congress to recess when testimony by the government's own witnesses at trials to date claimed that protestors inside the Capitol caused the delay in vote counting and debate;

(2)  Mr. Boele and Mr. Fischer shoved police officers and tried to enter the U.S. Capitol;

4

(3) That Mr. Fischer "commandeered" a riot shield when video shows it was handed to him and he used it in self-defense to protect against the indiscriminate, excessive force use of O/C spray and non-lethal munitions where police fired at his head and face;

(4) Mr. Boele and Mr. Fischer were in any way involved in "hand to hand combat" with police in the "tunnel;"

(5) That Mr. Boele and Mr. Fischer were charged by indictment on January 6, 2022 (Response at 3) when the initial indictment was only for Mr. Johnson and Mr. Rajewski who appeared to be in good stead with the FBI and government upon arrest on January 13, 2022 where no recommendation for denial of bond was made. Mr. Fischer was arrested on a complaint not tied to Rajewski or Johnson on January 13, 2022, and he was added to the case in a first superseding indictment in mid-February 2022. Mr. Boele and Mr. Brett were added to the case by a second superseding indictment in June 2022 as the government began developing its fiction for this Court about the Defendants acting in concert just because four of the five Defendants were Proud Boys before Jan 6, 2021; and where the government falsely claimed that Mr. Boele was a Proud Boy who knew all the co-defendants before January 6, 2021. Further, the government had all defendants identified and had been collecting on them for over a year as domestic terrorists prior to arrests in 2022 and subsequent false claims that they acted in concert.

**A. The Government's Response Ignores Key Binding Law, and the Motions at ECF No's 131 and 135 Should be Granted Because the Government Denies it Owes Specificity and Facts in the Indictment.**

If the government wanted to rely on this Circuit, it need not have gone further than Hunter, which still is valid. *Hunter v. District of Columbia*, 47 App. D.C. 406, 409-10 (D.C. Cir. 1918) as stated in Motion ECF 131 at 11 and in ECF No. 135 held that indictment insufficient because the facts did not allow distinction of the conduct covered from that which was legal, and held that

5

specifics are required. The Government ignored the Motions' presentation of binding law from Fed. R. Crim. P. 7(c)(1), *Childress*, *Hess*, *Russell*, *Cruikshank*, and in summary as follows.:

> An indictment may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. See *Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017).
>
> The Supreme Court explained: "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).
> The indictment "must descend to particulars." *Cruikshank*, 92 U.S. at 558.
>
> [T]he universal rule, on this subject, is, that all the material facts and circumstances embraced in the definition of the offence must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital. *United States v. Hess*, 124 U.S. 483, 486 (1888).

Motion ECF No. 131 at 10; ECF No. 135 at 11.

None of the counts listed for dismissal contain the necessary essential facts. Just because other judges have allowed the government to show up at trial with its surprise case, where videos of acts by everyone except the defendant - and false allegations of impact on interstate commerce that were not at the simultaneous time of the civil disorder by those being violent - led to convictions, does not mean this Court must proceed down the same path.

The government failed to advise this Court that there are standards from a recent case for Section 231(a)(3) that are not met in the indictment for this case. The government brought and prevailed in a case from Alabama not long ago, 20-CR-00073-TFM, where the defendant acted to block an interstate on ramp during a protest, and smashed the window of a responding police vehicle. While the government ignores the multiple prongs of Section 231(a)(3) in the indictment at ECF No. 54 here, in the Pugh case in Alabama all prongs were alleged by facts, and each element

6

of the statute was accompanied by facts. The events were on May 31, 2020, where over one hundred individuals occupied the Interstate 10 on-ramp at Water Street in downtown Mobile, and demonstrated the intent to occupy the upper level interstate itself. The protestors had pushed through metal barricades erected to keep them from accessing and blocking the I-10 on-ramp or interstate itself. Because of the protestors having created a dangerous situation, the police closed the on ramp and a nearby exit from the interstate highway. This caused commercial vehicles to take a 19.5 mile detour, along with significant traffic delays. The case showed interruption of commerce and a safety hazard where protestors and motorists could have been killed.

The police chief issued numerous dispersal orders. These were ignored. Only Tia Pugh was charged with violating 18 U.S.C. § 231(a)(3). The government's response (ECF No. 66) to her motion to dismiss on Constitutional grounds in Criminal No. 20-CR-00073-TFM told the court that only she was charged because Pugh, "through her violent actions, intentionally obstructed, interfered with, and impeded the Mobile Police Department's ability to quell the dangerous civil disorder occurring on the on-ramp that was blocking interstate commerce." Pugh admitted she intended to break the police car window to prevent the police response. The government stated in the response there had to be facts supporting a scienter to deliberately obstruct police from responding to the commerce obstruction. The case made clear that Pugh did not have to personally obstruct interstate commerce, but her interference had to intentionally be towards police who were responding to stop the civil disorder right then and there from obstructing interstate commerce and causing danger on I-10.

Pugh did not motion to dismiss based on lack of specificity because her part of the multi-pronged Section 231(a)(3) crime was clear. That is not the case here because the government provides no facts to indicate a civil disorder by violent people anywhere in D.C. was obstructing

7

interstate commerce or a government function under executive agency or department (such as mail delivery, or airport operations, et al.) where police were impeded while attempting to stop the commerce or government function obstruction. The Indictment at ECF No. 54 for Count One, along with prior trial prosecutions appear as an abuse of the law as it was intended and written since the government provides no facts that comport with the simultaneous multi-prong requirements for Section 231(a)(3). This is a matter of law and not for a jury issue since there was no simultaneous obstruction of commerce or a federal function (agency or department as normally exist under the executive branch) that police were impeded from responding to on the U.S. Capitol grounds by anyone outside the building.

    Further, the government did not attempt to correct its false claim in Count Six that the Vice President was temporarily visiting the U.S. Capitol grounds, or in either Count 6 or Count 7 to provide any facts that any Section 1752 restricted area to protect the Vice President legitimately existed anywhere outside on the U.S. Capitol grounds. Then, Count 9 fails to indicate any government business that Mr. Fischer interfered with, and the Response said nothing other than that the government does not need to provide all essential facts. Count 14 likewise is a regurgitation of the statute without mention of any specific act and the factual result such act(s) caused.

    The government claims in the Response at 7 that recitation of a statute, with the defendant's name, a general location (such as Washington, D.C.), and a date "is sufficient." Counts that allege a violation of law in Washington D.C. leave double jeopardy wide open, without the ability to defend whatever the government intends to show up with at trial. The government's assertion about required facts is not aligned with the U.S. Supreme Court in its numerous cases.

Because none of the U.S. Supreme Court cases, including the above cited cases, have been overruled or taken out of use, the government's claims that it need only provide a recitation of the statute; the state, district, or some generalized location; and a date must be denied. The Motions at ECF No. 131 and No. 135 should be granted because there are no essential facts that describe acts related to the alleged crimes where a fair and impartial jury could convict based on the indictment.

**B. The Motions at ECF No. 131 and No. 135 Should be Granted Because of the Government's Incomplete and Out of Context Representation of Caselaw.**

    **1. The Government misrepresented the *Hillie* case in its Response at 4.**

The government wrote, "An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed. *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017)." This is only partial law, and an incredible omission of the findings at the District Court. First, Fed. R. Of Crim P. 7 states there must be sufficient facts. The judge in *Hillie* initially dismissed Counts One through Seven because the indictment failed to provide "minimally required factual information regarding the conduct of Hillie's that the government says constitutes production and possession of child pornography in violation of federal law (Counts One through Seven), and as a result, the Court concludes that Hillie's Motion to Dismiss the Indictment must be GRANTED IN PART. . . ." *Hillie*, 227 F. Supp. 3d at 62. The Circuit Court overturned the trial court after new charges resulted in a guilty verdict. *Hillie* did not rest on merely stating the elements of the crime as the government inferred in its response.

Because the government's representation of the legal standard and lessons from *Hillie* is incomplete, the Court should apply the standards that require essential facts as presented by Mr. Boele and Mr. Fischer to dismiss the counts requested in ECF No. 131 and 135.

9

**2. The Government did not accurately represent the *Haldeman* case in its Response.**

The government wrote that "Well-established binding precedent holds that an indictment that charges an offense by tracking the statutory language and identifies all the elements is generally sufficient to call for a trial on the merits. See *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) ('The validity of alleging the elements of an offense in the language of the statute is, of course, well established.')." Response at 5. What Haldeman really said was, "neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice *as to every means* by which the prosecution hopes to prove that the crime was committed." *Haldeman*, 559 F.2d at 124. Mr. Haldeman challenged that not every fact was listed.

The *Haldeman* court never stated or inferred that only listing elements of a crime would suffice, as the government seems to represent in its response by taking words out of context. Instead, with an emphasis on the facts presented, the court wrote, "the count begins by stating the elements of the offense in the language of the statute. It **goes on to provide particulars of the alleged offense, including the instruments of justice obstructed and the means employed.** Neither as a matter of common sense nor of legal principle could the defendants have been in any doubt as to the crime with which they were charged." *Id*. The case made clear that not every single fact and bit of minutia must be in an indictment, rather than the government's representation in its Response of the case as if the Court did not require facts.

Because the government's representation of the legal standard and lessons from *Haldeman* is incomplete and out of context, the Court should apply the standards that require essential facts as presented by Mr. Boele and Mr. Fischer to dismiss the counts requested in ECF No. 131 and 135.

**3.  The Government did not accurately represent the *United States v. Resendiz-Ponce* case in its Response.**

The government wrote "((indictment charging attempted unlawful entry into the United States, in violation of 8 U.S.C. § 1326(a), was not defective because it did not allege whether the substantial step was satisfied by defendant walking into an inspection area, presenting a misleading identification card, or lying to the customs inspector)). . . *United States v. Resendiz-Ponce*, 549 U.S. 102, 108-09 (2007). This representation infers that the case matches the government's assertion that facts are not needed. *Resendiz-Ponce* gave the essential facts regarding the date and point of attempted illegal entry into the United States (where arrested) when combined with the criminal elements of the statute for illegal entry into the United States there was no doubt what was charged and could be defended against. The case did not require every detail.

The U.S. Supreme Court stated,

> [T]here are crimes that must be charged with greater specificity. See *Hamling*, 418 U. S., at 117. A clear example is the statute making it a crime for a witness summoned before a congressional committee to refuse to answer any question "pertinent to the question under inquiry. 2 U.S.C. § 192. As we explained at length in our opinion in *Russell* v. *United States*, 369 U. S. 749 (1962), a valid indictment for such a refusal to testify must go beyond the words of § 192 and allege the subject . . . . Both to provide fair notice to defendants and to ensure that any conviction would arise out of the theory of guilt presented to the grand jury, we held that indictments under § 192 must do more than restate the language of the statute.

*Resendiz-Ponce*, 549 U.S. at 109-10.

The government incredibly asserts the legal conclusion in its Response at 6 that Section 231(a)(3) does not require any specific facts. The assertion flies in the face of the Pugh case (*supra*) where the government went to great lengths to charge only one person based on intent, the act, and the specifics about the simultaneous obstruction of interstate commerce. Here, the government just repeats the statute with no facts about where and how the defendants violated the statute - that

requires an identified obstruction and specific intent. This is a trial surprise game the government practices unless sadly the defense attorney has not read and comprehended the statute and stipulates to an obstruction of interstate commerce hours and miles away from the U.S. Capitol grounds as if Section 231 were a negligence crime.

The Resendiz-Ponce Court above corroborates the holding, which the government ignored, where "It is an elementary principle of criminal pleading, that where the definition of an offence . . . includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species—it must descend to particulars." *Cruikshank*, 92 U.S. at 558. The charged crimes of burglarizing specific stores at specific times for specific items do not need to describe all means of how the stores were burglarized - and the U.S. Supreme Court and circuit cases have made clear over the years that many crimes require specific facts in the charging document. The government incorrectly tries in its Response to convince this Court that given cherry-picked sentences from cases out of context that a guessing game for defendants suffices as long as an indictment states each element of the statute charged.

Because the government has taken sentences out of context and cannot show that the unique crimes charged in the Indictment at ECF No. 54 provide essential facts for defense and to preclude double jeopardy, the Court should grant Mr. Boele's and Mr. Fischer's Motions at ECF No.'s 131 and 135.

    **4. The Government did a disservice to the *Hamling* case in its Response**.

The government wrote for *Hamling* that the take-away was that "(indictment was sufficient where it alleged that defendant mailed 'obscene' material in violation of 18 U.S.C. § 1461 but did not identify the allegedly obscene materials)." *Hamling v. United States*, 418 U.S. 87, 117-18

(1974). The Hamling Court did not deviate from the requirement that a statement of facts in addition to the statute is required. "Mailing obscene materials" from an address to another address, combined with the statute, described the actus reus. In its Response, the government left out that it has on its own alleged facts that are not in any grand jury testimony - where the government has refused for many months to provide any grand jury testimony for the second superseding indictment. The Indictment at ECF No. 54 gives no clue about what facts the grand jury based its decisions upon. As further affirmation of the standard for indictments - omitted by the government - the *Hamling* Court quoted *Hess* and wrote:

> Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged. *United States v. Hess*, 124 U.S. 483, 487 (1888).

*Hamling v. United States*, 418 U.S. at 117-18.

In its dissembling in the Response at 6 where it says that "specific facts" are not needed here based on *Resendiz-Ponce*, this is out of context use. The *Resendiz-Ponce* case contained essential facts and was distinguished because an arrest for an attempted illegal border crossing at a specific ground location does not need to include whether the defendant tried to use false identification or lied to the Border Officer. There was intent to illegally enter with an act conveyed in the charging document; and where the statute outlines what is illegal.

Here, the statutes at issue use generalized terms where facts are required to ascertain what is being charged - despite the government's legal conclusion that "specific facts" are not required. This is ironic since the government conducted highly invasive searches with storm-trooper attired FBI to gather up irrelevant Proud Boy coins and polo shirts not even present at the U.S. Capitol on January 6, 2021. The government seized telephones and computers from defendants merely

charged with walking onto alleged restricted grounds. The argument that facts are not needed is specious as demonstrated by the government's own actions in using domestic terrorism cover to secretly investigate and gain items without any warrants. the Defendants do not know what they are alleged by intent and act to have done, with where, when, or how also remaining as mysteries

The government's statement that facts are only required at trial (Response at 7) is an affront to the law - and leaves the door open to abuses of the law. The government's "interpretations" of caselaw are wrong. Because the Government did not meet specificity and essential fact requirements in the Indictment at ECF No. 54, and instead presented incomplete or out of context caselaw to try to show that no facts are needed in the Indictment, where the Indictment fails to state essential facts, the Defendants' Motions to Dismiss Counts at ECF 131 and No. 135 should be granted. The American justice system is not a game weighted against defendants who should be surprised by facts and narrative tales at trial, as the AUSA for this case showed by the Response is the new DOJ standard. This honorable Court should dismiss the counts as requested in ECF No.'s 131 and 135.

**5. The Government did not accurately represent the *Woodruff* case in its Response**.

In its Response at 6, the government encourages this Court to apply "bare bones" indictments because other judges have done so. One would think that to be consistent after criticizing defendants for following a crowd, the government would not urge group think and crowd following among judges. In this, the government misrepresents *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995)). Woodruff was not a case with a "bare bones" indictment as the government would have us believe. The "*bare bones*" indictment under the Hobbs Act in Woodruff - where the effect on interstate commerce can be de minimus - led to the court holding that "The indictment in this case charged the defendant with obstructing commerce by robbing three jewelry

stores and attempting to rob a fourth; it identified the location and the date of each of the charged activities. It thus served its intended functions." *U.S. v. Woodruff*, 50 F.3d 673, 677 (9th Cir. 1995). And, under the Hobbs Act, the government still had to prove an impact on interstate commerce at trial, where facts in the indictment showed high dollar burglary that more than made clear to any defendant that commerce could be impacted.

Because the government has not shown any case that supports omitting essential facts as has occurred in the Indictment at ECF No. 54, where the government instead provided shadowy representations of the caselaw throughout its Response, the Court should grant Mr. Boele's and Mr. Fischer's Motions at ECF No.'s 131 and 135 and dismiss Counts 1, 3, 6, 7, 9, 11, and 13-16, with Count 16 being duplicative, and where the government provided no counterargument in its Response.

### C. The Indictment's Counts Should be Dismissed as Requested in ECF's No. 131 and 135 Because a Bill of Particulars Cannot Cure a Defective Indictment

The government asserts in the Response at 8 that a request for a Bill of particulars is a cure for facts not contained in the vague, defective Indictment at ECF No. 54. The government obfuscates by referring to a Former judge Jackson statement in Williams that if there is confusion over facts, then a Bill of Particulars may suffice. This matter does not involve confusion over facts because the Indictment lacks facts. What Judge Jackson said on the matter at hand - as opposed to what the government presented, was, "courts have long held that, while a valid indictment can be clarified through a bill of particulars, an invalid indictment cannot be saved by one." *Hillie*, 227 F. Supp. 3d at 81.

Moreover, as then District Judge Jackson explained:

> A subsequent statement by the government in the form of a bill of particulars does not guarantee that the formal charges brought against the defendant adhere

> to the facts that the grand jury considered. See *Nance*, 533 F.2d at 701 (finding that a bill of particulars did not remedy an indictment that lacked "any allegation whatsoever" on a key element of the offense, because merely reciting the words of the statute gave the government "a free hand to insert the vital part of the indictment without reference to the grand jury"). And "to permit the omission [of a material fact] to be cured by a bill of particulars would be to allow the grand jury to indict with one crime in mind and to allow the U.S. Attorney to prosecute by producing evidence of a different crime"; which would, in essence, "usurp the function of the grand jury . . . and, in many cases, would violate due process by failing to give the accused fair notice of the charge he must meet." *Thomas*, 444 F.2d at 922-23.

*Hillie*, 227 F. Supp. 3d at 81.

It is truth that each Defendant has a constitutional "right . . . to be informed of the nature and cause of the accusation" against him. U.S. Const. Amend. VI.; see also Fed. R. Crim. P. 7(c) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"). By allowing the government to correct that violation with a bill of particulars would simply generate a constitutional issue, because "[n]o person shall be held to answer for a [felony], unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Indictment has to allege enough facts where a jury could convict and that is not the case here.

   D.  **The Indictment's Counts Should be Dismissed as Requested in ECF's No. 131 and 135 Because the Government is Creating Ex Post Facto Law and the Defendants Have Shown a Break With Precedent.**

The government inaccurately claims in its Response at 8-9 that Mr. Bole and Mr. Fischer cannot show a break with precedent.

The first major break with precedent is that judges are interpretating that for Section 1752(a)(1) and (a)(2), a willy-nilly closed area declaration by any entity that was never noticed and with no USSS advice or participation, existed outside at the U.S. Capitol on January 6, 2021. The break with precedent is that without any evidence of meetings and coordination with the

USSS, the DOJ determined after January 6, 2021 that the USCP with no standards on what a restricted area comprises for USSS protectees to temporarily visit, and with no budget for equipment, personnel, and training – i.e., no Congressional intent for the USCP declaring Section 1752 restricted areas by budget, statute, and resources for the entity to create Section 1752 restricted areas – without as much as a local press release, made the entire U.S. Capitol grounds restricted under Section 1752.

The caselaw shows the above to be preposterous. *U.S. v. Bursey*, 416 F.3d 301 (4th Cir. 2005); and *McCabe v. Macaula*, 551 F. Supp. 2d 771 (N.D. Iowa 2007) show that outdoor visits by the President or Vice President are overseen by the USSS, where local law enforcement assists. In these cases, the USSS coordinated with local law enforcement and then designated distances for restricted areas at certain times. Usually, the USSS is outdoors overseeing security. There were designated alternate channels for speech.

By precedent except for January 6, 2021 at the U.S. Capitol, the jurisdiction owner receives security requests from the USSS and works as part of a team to execute within their jurisdiction. The USSS requests that the FAA close certain airspace as required. It requests that the US Coast Guard close certain waterways and parts of the ocean when required. Pilots and boaters receive advisories of where they may not go. Just as the MPD in Washington, D.C. close off roadways for USSS protectee motorcades.  The statute does not say who requests and implements USSS protectee restricted areas. But the Congressional budget and sixty-plus years of precedent sure say that the USSS has the sole responsibility for President and Vice president security and coordinates for restricted areas. None of this existed for the outdoors alleged "restricted area" on January 6, 2021. It never existed for an Electoral Count. The Vice President was never scheduled to go outside.

The area closed was too large to effectively be defended as a 1752 "restricted area." There were no screening points while media and construction workers were allowed to roam. By the time protestors arrived after the Ray Epps breach element had done their bike-rack breach with sign tear down, there was no notice that any area was closed for speech. Instead of applying "knowingly entering" as the standard, judges are declaring that people unaware of why any shooting and tear gas was being employed were on notice the area was closed - even though the USCP made no use of the outdoor public address capabilities to tell people to depart before or after shooting at people.

As to Section 231(a)(3), the application for January 6, 2021 defendants is completely outside precedent. The Pugh case described supra applied exacting standards to meet the statute, while 100 other nearby people who blocked the I-10 entrance ramp were not charged.

The government inaccurately portrays the *Phomma* case, as if the defendant did not know what he had done to act criminally. In the Chaz, there were shootings, beatings, and forced store closures, where Jersey barriers blocked entrance to mail carriers, workers, waste management and much more, such as blocking government buildings and preventing commerce.

Just as in Pugh, the government did not keep secret what commerce was obstructed. Unlike here in many court cases, *Phomma* required that for conviction for Section 231(a)(3) Civil Disorder, law enforcement officers were lawfully performing lawful duties and the defendant obstructs, delays, or affects interstate commerce by his or her acts. The officers had to be attempting to "quell an interference with interstate commerce" when the person's acts interfered and obstructed. Obstruction of interstate commerce is simultaneous with acts interfering with officers because the person was trying prevented law enforcement from performing duties for the protection of interstate commerce. *United States v. Phomma*, 561 F. Supp. 3d 1059, 1066 (D. Or. 2021) and *Howard*, 2021 WL 3856290, at *10.

The Count One charge and the Section 1752 charges should be dismissed because the government has created an ex post facto law that does not match any historical precedent in application. And here, the government obtained an indictment without a single fact that showed knowledge of there being any Section 1752 restricted Area; an act of interference, where law enforcement were responding to an obstruction of commerce, where any government function was obstructed, or even that all law enforcement on the west outdoors side were acting lawfully versus under color of law with excessive, illegitimate employment of non-lethal weapons.

## IV. CONCLUSION

Because the government has not shown any case with similar law that supports omitting essential facts as occurred in the Indictment at ECF No. 54, where the government instead provided shadowy representations of the caselaw throughout its Response; and where a bill of particulars is not a solution, and where the government is creating ex post facto law in this prosecution, the Court should grant Mr. Boele's and Mr. Fischer's Motions at ECF No.'s 131 and 135 and dismiss Counts 1, 3, 6, 7, 9, 11, and 13-16. Count 16 is duplicative, and the government provided no valid counterargument in its Response.

Wherefore, for good cause shown, and for any other reasons the Court may decide, Mr. Fischer and Mr. Boele request that the Court issue the proposed orders that were attached to their Motions at ECF No.'s 131 and 135 dismissing Counts 1, 3, 6, 7, 9, 11, and 13-16.

Dated August 28, 2023   Respectfully submitted,

/s/ Carolyn A. Stewart
Carolyn A. Stewart, D.D.C. Bar No. FL0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

On this 28th day of August 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

*/s/ Carolyn A. Stewart*
Carolyn A. Stewart
Defense Attorney