UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CR-00011 (RJL) |
| | ) | |
| ALAN FISCHER III, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION AT ECF NO. 156

COMES NOW the Defendant, ALAN FISCHER III, by and through undersigned counsel, and respectfully submits this Reply in support of his reasonable Motion at ECF No. 156 for travel in November 2023 that the AUSAs unreasonably oppose in their ECF No. 157 Response; and where Mr. Fischer moves this Court to grant his requested travel. Mr. Fischer replies as follows:

### SUMMARY

Mr. Fischer requests this Court's approval for his reasonable travel to attend a wedding with his fiancée and their baby in Puerto Rico from November 8–12, 2023, which includes wedding party member events and bookend travel days. Pretrial Services consented to the travel request. Mr. Fischer's travel with his fiancée and their baby supports her role as a bridesmaid to a best friend, and allows shared parental care of their baby. Air travel will require his fiancée, with the baby, to go through TSA domestic terrorist stops and extended searches after having been unjustly watch listed because of association with Mr. Fischer. He was terrorism watch listed by FBI abuse of the Patriot Act, with bogus assessments and intelligence recommendations - all while presumed innocent. Because the AUSAs presented no rational or legitimate reasons for opposition to this family travel for a joyous event, where Mr. Fischer has been compliant with all release conditions, and timely filed his reasonable request, this Court should grant Mr. Fischer's motion.

**ARGUMENT**

This should have been an all-around consent motion for a vanilla matter given Mr. Fischer's Conditions of Release and his continuous compliance without issue. Mr. Fischer's Conditions of Release ((ECF No. 42, paragraph (7)(f) at 2; where he signed the Order at ECF No. 43)) require this Court's approval for <u>travel outside the continental U.S</u>. There is no requirement for a Section 3142(g) review that the AUSAs wrongly insert in the Response as justification to speak ill of Mr. Fischer. The AUSAs lack any indicia that Mr. Fischer took any act or is preparing to flee. But they allege flight risk out of thin air, as if Puerto Rico is a network hub for Americans fleeing from the justice system. For mainland U.S. travel, Mr. Fischer does notify his Pretrial Services Officer in advance — with no involvement by the AUSAs, the Court, or the undersigned. He is not a prisoner of the U.S. Middle District of Florida or confined to his home. He has complied with Pretrial Services requirements for domestic travel outside the Middle District of Florida.

The AUSAs should know that federal district courts approve overseas travel requests on a regular basis as the standard under the First Amendment and under the Bail Reform Act authority written within the Court's ordered conditions of release. Approval is the norm *unless* a defendant has given the court disapproval reason by his/her action while on pretrial release conditions or is creating an issue with the court schedule. The AUSAs equate pretrial release with punishment where under their standards, no defendant would be able to travel, and the Bail Reform Act would cease to exist. The opposition response approaches qualifying as vindictive where they oppose just because they can oppose, and to deliberately waste the Defense's time.

Both Mr. Fischer's local Pretrial Services Supervising Officer and the D.C. Pretrial Services Agency consented to the requested travel. They know best on a routine basis whether there would be any concern about Mr. Fischer for his travel. His Motion is a normal travel request

with no red flags or issues. He submitted it well in advance. There is no requirement for the Court to reassess January 6th charges. The Conditions of Release under the Bail Reform Act do not give the AUSAs a pass to use unjust accusations to interfere with Mr. Fischer's First Amendment right to travel. Usually only bad behavior under Release Conditions, such as criminal activity, preparations to flee, prior disregard for release conditions, or the defendant's failure to abide by the travel request process, might give rise to reasons to deny travel. Nothing about Mr. Fischer's behavior rises to a level to deny travel. Gordon and Lederer showed no just cause for opposition. The AUSAs oppose just because they can, to conduct character assassination of Mr. Fischer, and to cause unnecessary work for the Defense and Court.

For the above reasons alone, the Court should deny the AUSAs' opposition and grant Mr. Fischer's motion.

### A. <u>Unjustified and Absurd Allegations of Flight Risk:</u>

The AUSAs' opposition at ECF No. 157 shifted to new excuses to oppose the Motion, with uncalled for, out of place attacks on Mr. Fischer's character. When asked to consent to the Motion, within minutes of being asked AUSA Gordon wrote, with no supporting law or policy, that he opposed the travel because five days was too long, and this appeared to be a vacation. On his own Mr. Gordon invented policy that has no basis anywhere but put his controlling vindictiveness on full display. Ms. Lederer abandoned Gordon's indefensible position in the Response and then fabricated unsupported, speculative "flight risk." This shows the AUSAs never had an honest reason to oppose the travel to begin with. The AUSAs' allegations that Mr. Fischer during travel to Puerto Rico will flee and then fail to appear before this Court, and concurrently abandon his bride-to-be and baby are absurd.

The AUSAs give no reason why, given his 100% compliance with release conditions for over 1.5 years, Mr. Fischer would go to the U.S. territory of the Commonwealth of Puerto Rico to flee justice. Did the AUSAs intend to portray themselves as geographically and knowledge challenged when they addressed *travel to Puerto Rico as international travel*. Response at 2. They incredibly compared Puerto Rico travel as equivalent to travel to Mexico. *Id*. It is incomprehensible that the AUSAs are unaware that the U.S. District Court for the District of Puerto Rico (D.P.R.) exists in San Juan. Or that the U.S. Marshals have a District Marshal and office in San Juan. Surely they must know that any international travel from Puerto Rico requires a passport, which Mr. Fischer does not possess, and which must be presented to U.S. officials before boarding any aircraft or ship destined for an international destination from Puerto Rico. Then there is that troublesome detail of destination disembarkation without a passport. The AUSAs may have *Casablanca* fantasies of passports being available at a local bar. Further, it is irrational just based on geography that any person would view the *island of* Puerto Rico – with TSA and U.S. Customs presence – as being more conducive to flight from the justice system than from a mainland state. Yet the flight absurdity is the best the AUSAs could come up with after realizing they do not get to curtail travel and overtly punish pretrial defendants by ignoring norms.

The AUSAs do not address the inexplicable dangling participle in their false accusation that Mr. Fischer may try to flee, such as why Mr. Fischer's travel to a U.S. territorial *island without a passport* creates a flight risk. Puerto Rico's airports have TSA and U.S. Immigration and Customs Control. The unknown fiction is why they envision him suddenly after all this time abandoning his beloved fiancée and baby, and the rest of his family and home in Florida. The FBI's continued "Patriot Act" surveillance should easily confirm that he has no money and contacts to establish a life elsewhere.

There is no AUSA explanation *as to how* Mr. Fischer would flee without a passport *from the island* of Puerto Rico. An English channel swimmer could not reach the nearest island (British) without a huge support team following in boats, to include rest and sleep breaks. Wouldn't a trip to Switzerland be a better choice of a non-extradition country if the AUSAs pretend Mr. Fischer can swim to the Dominican Republic? The start in Puerto Rico is still non-sensical. Given an innocent request to go to a wedding, do the AUSAs envision him rowing across the Caribbean to communist Cuba in a stolen rowboat with a Tampa Bay Buccaneers pirate flag mounted at the bow, weighted down with water bottles, canned food, and with a patio umbrella affixed for shade? This "mind movie" is fantastical, given that Mr. Fischer is an American patriot and anti-communism when it comes to ideology.

Then aside from life support logistics, missing in the AUSA fantasy film is the reality of the rowing time, with currents, over the 761 miles (661 nautical miles) of shark infested waters. Estimates for sailboat travel to Cuba (much faster than a rowboat) vary from seven to ten days, although Mr. Fischer does not own a sailboat and the AUSAs do not describe any illicit sailing network that illegally transports Americans from Puerto Rico (U.S.) to communist Cuba or elsewhere. The Cubans might tend to shoot a sailboat out of the water if it drops off an illegal immigrant. Even the Dominican Republic as a nonextradition country kicks out illegal immigrants.

Mr. Fischer never considered flight from his required appearances to obtain acquittal at trial. The Response comment that a few January 6th defendants have failed to appear (FTA) is inappropriate. Those defendants' decisions to add at least a year in prison for FTA has nothing to do with Mr. Fischer. Because the AUSA flight speculation has no basis in reality, and was added to replace the untenable declaration by AUSA Gordon, where he unreasonably demanded shorter travel despite wedding party events, the Court should grant Mr. Fischer's Motion.

B. **False Claim by the AUSAs That the Motion is for Modification of Release Conditions**

As troubling as the AUSAs' writing that Puerto Rico is not part of the U.S. for travel is that the AUSAs falsely call this a motion *for modification of release conditions* (Response at 2). Mr. Fischer is not requesting any changes to his release conditions - he seeks to follow what is already in the Order. The ECF No. 42 Order by this Court requires a judicial decision about his requested travel outside the continental U.S. as submitted in the Motion. The Motion is a reasonable, timely request that has no impact on scheduled Court proceedings; and where Mr. Fischer has a history of compliance with his release conditions. The Court is not required by any policy to rehash the indictment or consider legal inventions by the AUSAs to relitigate Mr. Fischer's release under 18 U.S.C. Section 3142(g) as the Response argues. And as expected, the AUSAs used the Response to attack and defame Mr. Fischer publicly while misrepresenting and misapplying caselaw.

In misrepresenting the Motion as a requested "modification of release conditions," the AUSAs' Response tries to lure this Court (and the media) into a revisit of 18 U.S.C. Section 3142(g) (and takes the opportunity to conduct character assassination against Mr. Fischer on public record) when nothing requires a Bail Reform Act Section 3142(g) examination. See Response at 2-3 where the AUSAs also falsely call the Motion a request to amend conditions.

Pretrial Services is this Court's expert advisor on such a travel request, and they consented that all factors (prior compliance with release conditions, timely request, nature of the travel, presumption of innocence, et al) support Court approval. The DOJ instead under the knowingly false heading of "modification" asserts its own policy for a 3142(g) rehash where they add speculation and wild claims while disregarding that this Court already made travel available with Court approval. Order, ECF No. 42. Concerning to the Defense is that the Response shows the AUSAs know the Motion is not for modification of release conditions because they wrote, "Fischer

6

was allowed to remain on release pending trial, but subject to certain conditions, including . . . no travel outside the continental U.S. without Court approval. See ECF No. 43." Response at 2.

Because the AUSA argument and opposition that calls the Motion a request for modification of release conditions is disingenuous, and where the AUSAs put forth no rational justification to oppose, the Court should grant Mr. Fischer's Motion for travel.

### C. The AUSA Presents Inapplicable Example Caselaw to Respond

The AUSA misrepresents applicability of the *Owens* and *Adams* cases in the Response. Inexplicably, those cases are presented as authority (without any cite to a specific docket item transcript excerpt) when that is untrue. They are two cases that are completely distinct from this matter.

In the Owens case, the full facts show that Mr. Owens advised his attorney on April 22, 2022 of a corporate award that included travel from June 5 -10, 2022 from Houston to a resort in Mexico.  The corporation purchased tickets and made hotel arrangements. Mr. Owens' attorney did not file and instead waited until May 23 to enter an emergency motion. By not following the process of gaining approval in advance, and by agreeing to the travel reservations without court approval, Mr. Owens ended up being denied. The AUSA left out this part of the story.[1]

In the Adams case, when his attorney requested release conditions, the specificity he provided left out Court approved international travel. Adams was only allowed to travel 150 miles from his residence, which was completely different than his co-defendant's release conditions.

---

[1] As a note, this case involved Judge Howell and travel to Mexico. The AUSA reference to the Williams case, without any docket cite, makes it unclear as to why in that case Judge Howell again denied travel. Under ECF No. 28 the motion was entered, as opposed. The very same day with no response from the government, Judge Howell denied the motion where the minute entry shows it was just because he was a January 6th defendant. There is likely a rest of story somewhere, but it is not apparent how this decision was fair or just. All the defendant requested was to spend 10 days in Jamaica with a love interest.

7

There appears to be a motion to modify conditions of release and denial, but without any transcript or decision opinion, this case has no relation to Mr. Fischer's Motion.

The caselaw presented does not apply.

**D.   The Motion Contains No Vitriol or Falsehoods**

The Response at 4 indicates that the AUSAs consider speaking the truth about abuse of the Patriot Act and other DOJ / FBI abuses against January 6 defendants to be vitriol and false. The AUSAs accusation falls within a standard propaganda denial of truth. The Motion contained some inconvenient truth about DOJ weaponization of the Patriot Act against Mr. Fischer and his fiancée where they were and will be harassed and publicly humiliated when traveling by air. The DOJ's FBI did send an "intelligence" recommendation to the DHS for watch listing - and that document is under protective order.[2] Attached at Exhibit 1 is a boarding pass from Mr. Fischer's fiancée with the "SSSS" terrorist watchlist notation from their travel to Arizona in May 2023 for a wedding. On their return from Arizona, they again were callously pulled out of the TSA line and held for questioning and extra searches. Yet just yards away a seemingly never ending line of illegal immigrants were passed through security without questioning or extra searches, having been given a travel authorization paper by DHS. One TSA employee confessed that nobody had any idea of who these illegal immigrants might be, and the stream was daily. He saw a threat and it was not from Mr. Fischer and his fiancée.

---

[2] The FBI can answer: "For how many January 6th defendants did the FBI send correspondence to DHS recommending terrorist watch-listing?" The answer is a very large number given sample reporting in discovery and by defendants and their families. Also, between the DOJ's and Probation Services' non-transparent, secretive input, the Federal Bureau of Prisons apparently labels most if not all those incarcerated based on January 6th sentences as being guilty of terrorism crimes.  No sealed or public record of this has ever been made available to defendants or their counsels.

What does constitute vitriol and falsehood is the AUSAs insertion of false and unproven allegations with the label of "facts." Response at 1-2. For example, the Response disgracefully asserts that the standard scuba diver's "OK" sign is a white power gesture. The "white power" assertion has been debunked but as usual, a lie can never be repeated often enough when it comes to poisoning jury pools. The AUSAs certainly checked the block for use of the race card. The Response shows the AUSAs checked all usual propaganda blocks to poison a future jury by unjustly describing Mr. Fischer as a white nationalist, racist, and violent extremist, who on January 6, 2021 attempted to stop the "transition of power" - even though no power transitions on Electoral Count Day. The AUSAs created and then used the Response opportunity to unfairly inject poison into a future jury when they never had a legitimate reason to oppose Mr. Fischer's reasonable Motion.

## **CONCLUSION**

Because Mr. Fischer is presumed innocent, has been compliant with his ordered release conditions, followed procedures in requesting permission from this Court well in advance of travel, and awaits Court approval before obtaining an air ticket, while the AUSAs provided no rational justification to deny the travel, this Court should grant Mr. Fischer's Motion to attend the joyous event of a wedding with his bride-to-be and their infant baby.

Wherefore, for good cause shown, and for any other reasons the Court may decide, Mr. Fischer requests that the Court issue the proposed order that was attached to his Motion at ECF No. 156.

Dated October 10, 2023                                         Respectfully submitted,

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, D.D.C. Bar No. FL0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

On this 10th day of October 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart
Defense Attorney