UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CASE NO. 1:22-CR-11 (RJL) |
| v. | : |
| | : |
| ALAN FISCHER, III, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN *LIMINE*
REGARDING EVIDENCE OF DEFENDANT'S PROUD BOY AFFILIATION**

The United States, by and through its counsel, the United States Attorney for the District of Columbia, opposes defendant's motion *in limine* to preclude the government "from introducing any evidence in its case in chief concerning" Alan Fischer's affiliation with the Proud Boys. ECF 181 at 1. No trial date or deadlines for a Rule 404(b) notice or exhibit list have been set. Witness lists have not been exchanged. This motion is premature, and the Court should hold it in abeyance until it is ripe, when the actual trial evidence has been identified, witness lists have been exchanged, and the Court can properly consider its admissibility. At that point, the government may seek to supplement this pleading to address the actual, concrete evidence in dispute, not the abstract dispute defendant raises now.

Furthermore, it is not even clear if this case will be tried to a jury or the Court. If this will be a bench trial, then Rule 403 concerns fall away. Rule 403 has "a highly limited application, if any at all, in a bench trial." *United States v. MacAndrew*, No. 21-cr-730 (CKK), 2022 WL 17961247, at *3 (D.D.C. Dec. 27, 2022) (citation omitted). *See, also, e.g., United States v. DNRB, Inc.*, 895 F.3d 1063, 1068 (8th Cir. 2018) ("[W]e presume that a judge conducting a bench trial will use evidence properly, mitigating any prejudice.").

Nonetheless, in the remainder of this response, the government endeavors to generally describe the evidence relating to Fischer's Proud Boys-related conduct. Leading up to January 6,

1

Fischer communicated with fellow Proud Boys regarding plans and preparations for violence in Washington, D.C. Fischer planned to and did meet a group of approximately 100 Proud Boys at the Washington Monument on the morning of January 6. Rather than traveling to the planned speeches near the Ellipse, Fischer marched with a group of Proud Boys directly to the Capitol—all while yelling Proud Boys slogans and flashing Proud Boys hand-gestures along the way. After storming Capitol grounds with the group, Fischer remained close to his group as they continued to flash Proud Boys hand-gestures, celebrating their feat. Fischer then broke off from the main group and acted in concert with a small group of men from his Proud Boys chapter as they attempted to breach the Lower West Tunnel—while continuing to flash Proud Boys hand-gestures to one another. Fischer's affiliation with the Proud Boys is thus bound up with his decision to storm the Capitol on January 6 and his conduct that day. None of this evidence is impermissible character evidence, and none of it fails Rule 403 balancing. At least two other judges of the Court have rejected similar motions, recognizing the relevance of many of the very same facts Fischer seeks to exclude here. See *United States v. Christopher Worrell* (21-cr-292 (RCL)), Apr. 21, 2023, Minute Entry; and *United States v. Ethan Nordean* (21-cr-175-TJK)), Dec. 14, 2022, Minute Entry. This Court should ultimately do the same.

## BACKGROUND

### I. Fischer Carried Out His Crimes on January 6 with the Proud Boys

The Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos and slogans to public events. Symbols associated with the Proud Boys are the "ok" hand signals and

2

the slogans "FAFO" (Fuck Around Find Out), "Proud of Your Boy" (or "POYB" for short), and "uhuru," a Swahili word meaning "freedom" or "independence" that the Proud Boys have appropriated.

Throughout the United States, there are local Proud Boys chapters (or "zones"), which are typically led by chapter "presidents." Each chapter has a degree of autonomy insofar as the president of a local chapter governs that chapter in its geographic location. Fischer is a member of the "Trigger City" (or "Zone 3") chapter of the Proud Boys located in the Tampa area of Florida. Fischer traveled to Washington, D.C. for an election-related rally with the Proud Boys on December 12, 2020, where he was photographed in Proud Boy colors while flashing the "ok" hand signal. Photos located on devices seized from Fischer's home include Fischer posing in Proud Boy colors and making hand gestures during his December 12th visit to D.C.

Fischer has also been identified in several Telegram chats with Proud Boys, including those in leadership roles. Specifically, during the investigation of several Proud Boys, including Fischer, the FBI recovered encrypted communications on the platform Telegram among numerous Proud Boys who had prepared for and committed crimes at the Capitol. Fischer participated in these encrypted communications, including in communications that discussed the potential for violence at the Capitol on January 6 and plans for the group to meet at the Washington Monument at 10 a.m. on January 6 wearing plainclothes (i.e., not in Proud Boys colors).  These communications provide critical context for Fischer's conduct on January 6. They explain not only why he arrived at the Washington Monument with approximately 100 other men, but the communications also provide key insights into Fischer's motive, intent, and state of mind as he marched away from the speeches on the Ellipse and stormed the Capitol grounds. In the wake of January 6, Fischer continued to participate in Telegram chats where he reflected on January 6.

II.     **Fischer's Conduct on January 6, 2021**

On the morning of January 6, Fischer followed the instructions provided in Telegram chats and joined a group of over than 100 Proud Boys members near the Washington Monument around 10 a.m. Present, along with Fischer, were other members of the "Trigger City" chapter including his co-defendants: Brian Boele, Dion Rajewski, James Brett, and Zachary Johnson. Throughout the day, Fischer is captured in video and photographs as he operated in coordination with his co-defendants and amongst other Proud Boys.

At around 10:30 a.m., leaders of the group at the Washington Monument organized the men into formation and marched the group away from the Washington Monument and the nearby speeches at the Ellipse. Fischer, as seen in the below video still (green circle), was among those in the front of the pack which included his co-defendants. As the group marched, leaders used megaphones to not only encourage the pack, but to make threats at U.S. Capitol Police officers.



Shortly after noon, the group arrived at a collection of food trucks located at approximately 2nd Street and Constitution Avenue NW. At approximately 12:45 p.m., fifteen minutes before the

certification of the Electoral College vote was scheduled to start, leaders of the march again mustered the men and marched them back towards the Capitol. The marching group arrived at the Peace Circle, at the edge of the restricted portion of Capitol grounds at approximately 12:50 p.m. Former President Trump was still speaking at the Ellipse, but Fischer continued to remain with his group. Within minutes of arriving at Peace Circle, the crowd breached the restricted perimeter of the Capitol. Many of the Proud Boys joined the mob surging forward, with others encouraging the mob. Fischer and other members of his chapter made their way to the front of the mob within minutes.

Once Fischer reached the West Plaza, he, along with his co-defendants, joined the crowd of rioters. Fischer remained close to his co-defendants and other Proud Boys on the West Plaza where they interacted with one another and exchanged Proud Boys gestures and shouted slogans. Shortly after 2 p.m.—more than an hour after the initial breach—the line of officers on the West Plaza fell. Fischer and his co-defendants remained close together as they followed the retreating officers to the Lower West Terrace Tunnel (the "Tunnel"). At approximately 3:15 p.m., Fischer entered the Tunnel with his co-defendants. From about 3:16 p.m. to 3:18 p.m., Fischer and his co-defendants collectively pushed against the officers along with other rioters. Fischer shouted to others and was at times rocking together with his co-defendants and the other rioters in a coordinated fashion to breach the line of officers and gain entry to the interior of the Capitol building. Fischer and other rioters were eventually expelled from the Tunnel. Outside the Tunnel, Fischer displayed a Proud Boy hand gesture (video still below) and appeared to be congratulating his co-defendants while co-defendant Johnson is captured saying a Proud Boy phrase: "proud of your fucking boy." Also, during the course of the day, Fischer and his co-defendants also posed for various photographs while on Capitol grounds in which either he or his co-defendants (and sometimes both together), can be seen flashing the "ok" hand symbol.



Fischer returned to the Tunnel, with co-defendants and others, before being expelled once more. Fischer traveled back to the West Plaza where he threw a chair and cone at officers.

## PROCEDURAL HISTORY

Based on his actions on January 6, 2021, Fischer was charged with the following offenses: civil disorder (aiding and abetting), in violation of 18 U.S.C. § 231(a)(3) and 2 (Counts 1 and 16); assaulting, resisting, or impeding certain officers using a deadly weapon (aiding and abetting), in violation of 18 U.S.C. §111(a)(1),(b), and 2 (Count 3); entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Count 6); disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Count 9); engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count 13); disorderly conduct in the Capitol Grounds or buildings ((aiding and abetting), in violation of 40 U.S.C. § 5104(e)(2)(D) and 2 (Count 14); and act of physical violence in Capitol Grounds or Buildings, in violation 40 U.S.C. § 5104(e)(2)(F) and 2

(Count 15).

On December 19, 2023, defendant filed the instant motion to preclude the government from introducing or mentioning Fischer's Proud Boy affiliation. (ECF No. 181).

## **LEGAL STANDARD**

Relevant evidence is admissible, Fed. R. Evid. 402, and evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Relevant evidence may only be excluded if its "probative value is *substantially* outweighed" by countervailing factors such as "unfair prejudice, confusing the issues or misleading the jury." Fed. R. Evid. 403 (emphasis added). This rule "establishes a high barrier to justify the exclusion of relevant evidence, by requiring that its probative value must be 'substantially' outweighed by considerations such as 'unfair' prejudice." *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020). "Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (emphasis in original) (cleaned up). In this analysis, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984) (quoting United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978)) (emphasis in original) (cleaned up); see also Roberson, 581 F. Supp. 3d at 76 ("Rule 403 does not countenance exclusion of evidence because it too effectively suggests that the defendant committed the charged crime.").

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See United States v.*

7

*Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)).  As the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929.  Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder,* 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'"); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." (citations and punctuation omitted) (emphasis in original)).Some evidence that is "intrinsic" to the government's case is not Rule 404(b) evidence at all. "In other words, Rule 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to 'evidence . . . of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously

8

with the charged crime . . . if they facilitate the commission of the charged crime." *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (quoting *Bowie,* 232 F.3d at 929). "Notably, 'intrinsic' evidence of a charged offense will always satisfy the requirements of Rule 404(b), thus the distinction [between intrinsic and 'other' acts evidence] serves only to 'relieve the prosecution of Rule 404(b)'s notice requirement and the Court of its obligation to given an appropriate limiting instruction upon defense counsel's request.'" *United States v. Edwards*, 889 F. Supp. 2d 47, 49 (D.D.C. 2012) (quoting *Bowie*, 232 F.3d at 927).

The government is entitled to anticipate the defendant's denial of the requisite mental state—e.g., intent or knowledge—and to introduce similar act evidence as part of its case-in-chief. *See United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the government's case-in-chief if it is apparent that the defendant will dispute that issue"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief"); *United States v. Bussey*, 432 F.2d 1330, 1333 n.13 (D.C. Cir. 1970) (noting that Rule 404(b) other crimes evidence to prove identity and to prove that prior and subsequent offenses are so identical as to mark them as handiwork of the defendant should be introduced in the government's case-in- chief).

Some evidence that is "intrinsic" to the government's case is not Rule 404(b) evidence at all. "In other words, Rule 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to 'evidence . . . of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime." *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (quoting *Bowie,* 232 F.3d at 929). "Notably, 'intrinsic' evidence of a charged offense will always satisfy the requirements of Rule

9

404(b), thus the distinction [between intrinsic and 'other' acts evidence] serves only to 'relieve the prosecution of Rule 404(b)'s notice requirement and the Court of its obligation to given an appropriate limiting instruction upon defense counsel's request.'" *United States v. Edwards*, 889 F. Supp. 2d 47, 49 (D.D.C. 2012) (quoting *Bowie*, 232 F.3d at 927).

## ARGUMENT

Fischer was involved in Proud Boy discussions about January 6 in advance, met with the Proud Boys at the Washington Monument and marched straight to the Capitol on January 6; breached the restricted perimeter alongside fellow Proud Boys, and celebrated attacks on police with members of his Proud Boys zone.  The government is not using Fischer's Proud Boy affiliation as propensity evidence.  Much of this evidence is not "other acts" evidence at all, but rather direct evidence of Fischer's plans for and conduct on January 6, intertwined with what he did that day. Even viewed under the rubric of Rule 404(b), this evidence demonstrates Fischer's motive to storm the Capitol and obstruct and assault officers, his consciousness of wrongdoing, and his plan, preparation, and absence of mistake that day. Fischer's and his co-defendants' use of Proud Boys slogans and gestures (often while masked) also serve to confirm Fischer's identity as the individual committing crimes in coordination with others on January 6, 2021. These valid Rule 404(b) purposes are of particular importance for several charges in this case, which requires the government to prove Fischer's knowledge and intent on January 6 and his consciousness of wrongdoing.

Knowledge and intent are relevant to the charges at issue in his case.  Counts One and Sixteen, the violations of 18 U.S.C. § 231(a)(3), require that the government prove that Fischer obstructed, impeded, or interfered with law enforcement on January 6, and criminalizes acts performed "<u>with the intent</u> to obstruct, impede, or interfere with a law enforcement officer." *United States v. McHugh*, No. CR 21-453 (JDB), 2022 WL 296304, at *14 (D.D.C. Feb. 1, 2022) (emphasis in original). Additional counts charged in this case also require the government to show knowledge

10

and intent. Count 6, a felony charge under 18 U.S.C. § 1752(a)(1) and (b)(1)(A), requires proof that Fischer "knowingly" "enter[ed] or remain[ed] in a restricted building or grounds"—in this case the restricted portion of the U.S. Capitol grounds on January 6, 2021. Count 9, alleging a violation of 18 U.S.C. § 1752(a)(2), similarly requires proof that Fischer engaged in certain conduct in a restricted building or grounds and "with intent to impede or disrupt the orderly conduct of Government business or official functions." Count 13, alleging a violation of 18 U.S.C. § 1752(a)(4) also requires proof that Fischer "knowingly[] engage[d] in any act of physical violence" in a restricted building or grounds. Finally, the two misdemeanor charges under 40 U.S.C. § 5104(e)(2) —Counts 14 and 15—require proof that Fischer "willfully and knowingly" engaged in certain conduct in a "Capitol Building[]."

I. Analysis

    A. **The Government May Admit Evidence of Fischer's Affiliation with the Proud Boys, Conduct as a Proud Boy, and Relationship with other Proud Boys.**

Fischer asserts that there "is simply no relevance to any affiliation or connection the defendant has to the Proud Boys" and the "only purpose" for offering evidence related to Fischer's affiliations "is to distract the jury from the issues" and "interject politics" into the trial. ECF No 181 at 5. Defendant's assertions are baseless. It was the defendant—not the government—that interjected "politics" into the trial by, *inter alia*, relentlessly attacking and assaulting officers during a Joint Session of Congress to certify the results of a democratic election. "Politics," to the extent they concern support for President Trump, the desire to keep him in office even through violent means, and a willingness to oppose police who might stand in the way, are highly relevant here. The government does not intend to dwell on the Proud Boys' ideology unrelated to the group's plans for January 6.

Fischer's affiliation with the Proud Boys serves highly relevant, non-propensity purposes. As described below, much of this evidence is inextricably intertwined. It includes, for example, things Fischer said or did on January 6 and identifies others who were at the Capitol with him and with

11

whom he communicated.

Fischer's Proud Boys affiliation is part of the story of his decision to travel to D.C. for the events of January 6. Fischer's communications with and allegiance to other Proud Boys explains why, instead of attending the rally, he linked up with 100 grown men to march from the Washington Monument to the west side of the U.S. Capitol. Fischer's communications with and allegiance to other Proud Boys explains why he stormed the Capitol grounds and remained close to his group while working on concert to battle with officers for hours.

Fischer's participation in the Proud Boys march to the Capitol is relevant for several reasons, all unrelated to propensity. That Fischer traveled to the U.S. Capitol even before the President's speech is highly indicative of his knowledge of what was occurring at the Capitol on January 6th and his intent to breach the restrict perimeter and cause maximum chaos—he was not, as some defendants have claimed, merely present to attend a rally and then directed by others to the U.S. Capitol. Had he traveled to the Capitol alone and not surveilled the Capitol defenses with the Proud Boys group, Fischer could claim that he did not realize the grounds were restricted and was simply caught up in a mob. Fischer's participation in the Proud Boys' march provides shows that he traveled with a large group of individuals geared for hand-to-hand combat helps dispel the defense that Fischer did not intend to engage in assaultive conduct. Again, the probative value of this evidence is different knowing that this is a cohesive group, not a random collection of individuals.

Moreover, background contextual evidence about this smaller "zone"-specific group, including that Fischer and these other individuals are members of Florida's "Zone 3" Proud Boy chapter, will be important for the jury to even understand certain connections, communications, and actions. For example, Fischer can be seen in video and photographs moving and working with a smaller group (his co-defendants) while on Capitol grounds—that is no coincidence. Fischer also congratulates and poses with his co-defendants while certain Proud Boy symbols and phrases are

made. These movements, statements, and symbols are meaningless absent context about Fischer's bonds with his co-defendants and the Proud Boys more generally.

Fischer also communicated with other members of the Proud Boys leading up to and on January 6.  These communications are not "other crimes" evidence: they are communications in which expectations for January 6 are discussed. Fischer's anticipation of (and eagerness for) violence on January 6, which is bound up with references to his Proud Boy affiliation, suggests that he acted with consciousness of wrongdoing on January 6 and intentionally interfered with law enforcement.   Fischer's participation in large chats with others who celebrated acts of violence also provide evidence of a motive for Fischer to participate in illegal actions on January 6 to impress and advance within the Proud Boy organization and win the approval of others.  Finally, the preparations for violence are also evidence of an intent to interfere with police, as required for the Section 231 charge.

Fischer's communications with Proud Boys, which include Proud Boy references, are admissible as direct evidence of Fischer's conduct on January 6 and also for several purposes allowed under Rule 404(b).And the fact that Fischer had these communications (and took the above-described actions) with members of a fraternal group, not simply at random with a group of anonymous individuals, is probative of Fischer's state of mind, intent, and knowledge that day. Furthermore, on a basic level, the repeated Proud Boys references and associations help the jury identify Fischer throughout January 6, both during the march and at the Capitol. Thus, for example, that the person captured in video or photos uses Proud Boy catchphrases, slogans, or hand symbols—along with evidence Fischer has used those before—helps identify the person as Fischer. That Fischer appears in photographs and videos with multiple individuals from Florida with whom he associated (members of his Proud Boys chapter) similarly makes it more likely that he (rather than some unknown individual who looks like him) is the individual in those photographs and video.

Additionally, the Proud Boys-related clothing and items collected/photographed during the search warrant also prove Fischer's identity in video and photos from the Capitol on January 6.

### i. Evidence of Fischer's Relationship with The Proud Boys and Others Present on January 6, 2021, are Relevant to Prove Fischer's Aiding and Abetting of Others' Criminal Conduct

Fischer has been charged with aiding and abetting others' criminal conduct, and the evidence will show that Fischer committed his crimes in close coordination with others. The evidence of Fischer's relationship and bonds with others, including his co-defendants, thus serves to prove one of the elements of the offense—a shared knowledge and intent to bring about the object of the crime. As Judge Kelly previously found with respect to leaders of the Proud Boys, who were charged with conspiracy, the defendants' membership in the Proud Boys group "was relevant to the nature and circumstances of the offense insofar as they show that the defendants were leaders and shared a pre-existing common bond which provides context to explain how these individuals, from disparate parts of the country, are at least alleged to have wound up together in Washington, D.C." *United States v. Nordean et al.*, 21-CR-175-TJK, Dkt. 71 (transcript of April 19, 2021 detention ruling). Even in the context of highly prejudicial evidence of a defendant's gang affiliation, that has been routinely deemed "particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue[,]' such as in a conspiracy case." *United States v. Suggs*, 374 F.3d 508, 516 (7th Cir. 2004) (quoting *United States v. Thomas,* 86 F.3d 647, 652 (7th Cir. 1996)); *United States v. Shelledy*, 961 F.3d 1014, 1020-21 (8th Cir. 2020) ("The government may elicit testimony about the defendant's social or gang membership if it is relevant to a disputed issue in the case"); *United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014).

**II.    Rule 403 Does Not Bar the Admission of Fischer's Proud Boy Affiliation**

Even if this is a jury, not a bench, trial, Rule 403 should not bar the admission of the evidence of Fischer's Proud Boy connection. In theory, any 404(b) evidence "raises the danger that the jury

14

will improperly 'conclude that because [the defendant] committed some other crime, he must have committed the one charged in the indictment.'" *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (quoting *Crowder II*, 141 F.3d at 1210). But that potential prejudice is not unique to this case—where the government has shown a permissible non-propensity purpose. Potential prejudice is endemic to all Rule 404(b) evidence, yet prejudice in that attenuated sense cannot justify a per se rule of exclusion. *See Crowder II*, 141 F.3d at 1210. The defense must instead show "compelling or unique" evidence of prejudice, *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995), distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential of any Rule 404(b) evidence. And it "is a sound rule that the balance" of admissibility under Rule 403 "should generally be struck in favor of admission when the evidence," as here, has "a close relationship," temporally and substantively, "to the event charged.'" *United States v. Cooper*, 229 F. Supp. 3d 75, 76 (D.D.C. 2017) (quoting *Cassell*, 292 F.3d at 795).

      Here, the evidence of Fischer's Proud Boy connection or affiliation is closely related – substantively and temporally – to the charged events, limiting the "unfairness" of prejudice under Rule 403. Fischer followed through on plans to meet up with Proud Boys on January 6. Plans which were received via messages from a Proud Boy group regarding plans for the day. Telegram chats indicate Fischer joined the Proud Boys a few months before January 6, and many of the communications referring to the Proud Boys are within one week of January 6. The same conversations and messages that reference the Proud Boys also reference January 6. Evidence that Fischer prepared for violence on January 6 would properly serve to show that he engaged in violence on January 6, regardless of whether such discussions implicated an affiliation with the Proud Boys. In short, Fischer's interactions with the Proud Boys are part of his preparation for the charged crime and his actions on January 6, and much of the prejudice from this evidence is that it directly implicates Fischer in the variety of crimes he committed on January 6, not because of some improper inference

or parallel the jury might draw.

Moreover, there are several ways to address any risk that the jury would convict Fischer simply because of his Proud Boy affiliation.  First, the government agrees with defendant that this will not be a trial about the Proud Boys. Nonetheless, because Fischer's planning, motive, and intent on January 6 are intertwined with his Proud Boy affiliation, the government does not believe that all evidence of that affiliation can or should be surgically removed from the trial entirely. Fischer's affiliation with the Proud Boys and, to a limited extent, his endorsement of their celebration of violence also proves his intent and aiding of others.

Second, through *voir dire*, the Court and the parties can explore jurors' knowledge of the Proud Boys and ascertain whether any jurors have biases that cannot be set aside.  The Court can strike jurors who believe that they could not decide a case based on the evidence if they learned that the defendant was a Proud Boy.

Third, the Court can give a limiting instruction relating to references to the Proud Boys and advising the jurors of the permissible purposes for which they can use the information.  The Court will also remind the jurors of the elements of the crime and their duty to apply the law as given to them to the facts of the case.  The D.C. Circuit has consistently chosen to minimize the residual risk of prejudice not by excluding Rule 404(b) evidence, but by issuing limiting instructions to the jury. *See, e.g., Douglas*, 482 F.3d at 601 (emphasizing the significance of the district court's instructions to the jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to the jury enter into the Rule 403 balancing analysis).  The Court can issue such instructions here.

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion.

>Respectfully submitted,
>
>MATTHEW M. GRAVES
>United States Attorney
>DC Bar No. 481052
>
>By: /s/ REBEKAH LEDERER
>    REBEKAH LEDERER
>    Pennsylvania Bar No. 320922
>    Assistant United States Attorney
>    U.S Attorney's Office for District of
>    Columbia 601 D St. N.W, Washington, DC
>    20530
>    Tel. No. (202) 252-7012
>    rebekah.lederer@usdoj.gov