### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　**Complainant**<br><br>　　　　　-v-<br><br>**ALAN J. FISCHER, III**<br>**(a/k/a "A.J." Fischer)**<br><br>　　　　　　**Defendant.** | Criminal Case No.:<br>22-cr-00011 (RJL)<br><br>**DECLARATION OF BRAD RUKSTALES IN SUPPORT OF DEFENDANT ALAN J. FISCHER, II'S REPLY AND MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CHANGE OF VENUE**<br><br>*Assigned to Honorable Judge Richard J. Leon* |

### DECLARATION OF BRAD RUKSTALES OF WATCHPOSTANALYTICS.COM

　　　　I, BRAD RUKSTALES, hereby declare and state these facts and/or factual assertions as follows under penalty of law to state accurately to the best of my knowledge and information. I am not at a place convenient to swear before a Notary Public on short notice at this time, but file this sworn affidavit, as authorized by 28 U.S.C. § 1746:

　　　　1)　　My name is Brad Rukstales.

　　　　2)　　I am that same Brad Rukstales who is the leader of Watch Post Analytics and who summarized for this Court data on media consumption, concentration, and appetite for news reports in the District of Columbia as being distinctly different from other parties of the country. This data and my report were attached to the Motion for Change of Venue filed by Defendant A.J. Fischer.

　　　　3)　　I am legally able to make this affidavit because I am over the age of 18 years old and legally competent in every way to swear to these facts.

　　　　4)　　I have first-hand knowledge of the facts sworn to in this affidavit.

1

5) In the Government's Opposition to the Defendant A.J. Fischer's Motion for Change of Venue, the Government inappropriately (by misunderstanding) the research work that I provided to the Court but then also engaged in irrelevant *ad hominem* attacks against me personally, rather than addressing the facts supporting an order of a transfer of venue.

6) Initially, the Government fails to understand that the research that I and Watch Post Analytics is not original to Watch Post Analytics nor intended to be. Watch Post Analytics has compiled data from unimpeachable sources, as described, assembled them, and presented a streamlined summary for the Court's analysis.

7) On page 6 of its Opposition, the Government objects that:

> The WatchPost analysis methodology does not, in fact, revolutionize jury-pool analysis and escape the well documented issues with polling, but simply draws from a different data source: terms appearing in unspecified media sources, rather than responses to survey questions.

8) Which is odd because Watch Post Analytics did not set out to "revolutionize" anything but to summarize for the Court in a streamlined way the state of the art from many sources and data that are beyond question and above reproach.

9) What the new data analysis provided to the Court does is precisely to "draw[] from a different data source," particularly where it is the nature of the data used in past motions for change of venue that courts have found less than needed.

10) Where most data analysis has focused on the political polling that 92.1% of the Washington, D.C. jury poll voted for Donald Trump's opponent in the 2020 but also the upcoming 2024 presidential election, Watch Post Analytics summarizes for the Court the extensive data showing that there has been massive *and continuing* news coverage distinctly different in Washington, D.C. than in the rest of the country.

11) The Government would have the Court and the public believe that *voir dire* can

cure a jury pool where 92.1% of prospective jurors voted against the candidate, Donald Trump, whom January 6 Defendants were demonstrating for, but would not of course trust *voir dire* if 100% of all prospective jurors brought before this Court were exclusively Trump supporters.

12) Therefore, to say that our data analysis draws from a different data source is to notice why the Court has now been supplied with unimpeachable and irrefutable evidence that the jury pool of the very small population of the District of Columbia has been saturated with news coverage about January 6, 2021, and the prosecutions of Defendants from that day, both pre-trial publicity forced upon the jury pool but also the jury pool reaching out to obtain information about January 6, 2021, prosecutions.

13) Both are dramatically different in Washington, D.C., than in the rest of the nation.

14) Nearly all of the Opposition's questions are set aside by the fact that the data shows a drastic difference between Washington, D.C. and the rest of the nation.

15) The Government does not seem to grasp the presentation or have a desire to do so.

16) The Opposition suggests that all polling is limited to responses to polling questions, and that the Meltwater / Watchpost data is no different from polling.

17) However, that is not in any sense what the data shows here.

18) The summary of original source information from the news media and its delivery systems over the internet are not polling questions, nor are they intended to be.

19) The summary prepared by Watch Post Analytics of direct source news media data shows both the assertive demand and delivery of pre-trial publicity.

20) This is not in any sense polling prospective jurors to hope they are honest with themselves about their unconscious bias and motivations and honest with the survey taker.

21) The data is not asking anyone "Did you hear about January 6? The Proud Boys?

The statements by the President, Vice President, Attorney General, Congressional leaders?"

22) The data shows the direct demand for and consumption of the pre-trial publicity.

23) The delivery data could not be more far-removed from asking people survey questions about their exposure to pre-trial publicity. Even if a respondent to a survey had forgotten their exposure to news coverage, the data shows the news reports being delivered to them in high concentrations in Washington, D.C. The data does not depend upon their accuracy or honesty in answering questions on a survey.

24) The Government understandably questions "unspecified media sources," but those media sources are specified in Exhibit _____ from the Meltwater Company Review.

25) Meanwhile, I suggest as I believe Fischer's counsel argues that the Government's attention on me rather than the facts indicates the weakness of the Government's attempt to avoid the factual basis requiring a change of venue:

26) On Page 2 of the Opposition, Footnote 2, attempts to distract the Court:

> "9. Shortly after 2:30 p.m., rioters who had breached the Capitol confronted U.S. Capitol Police ("USCP") officers in the Capitol Crypt. Some rioters threw chairs and hurled unknown substances at the officers. Video surveillance captured USCP officers retreating from the Crypt down a flight of stairs and escalators to the Capitol Visitors Center ("CVC"), which is also part of the Capitol building, while chairs tumbled down the stairs behind them. The officers then drew back toward the end of a corridor in the CVC to form a defensive line. Moments later, Rukstales descended the stairwell, picked up one of the chairs at the bottom of the stairwell, and threw it in the direction of where the officers had retreated down the corridor. By then, the officers were dozens of feet away from Rukstales and were not in danger of being hit by the chair he threw."

27) However, a close reading of this will show that I did not "throw chairs at them." They were dozens of feet away, so much so that I had no knowledge that there were officers anywhere near at the time. I was safely throwing a broken chair out of the way. It is obvious

within the Government's own claims that the fact that there were officers that had retreated was unknown to me until I was shown a video. The statement above even mentions that the officers were far away from where the chair was tossed. They were not in my sight at the time.

28) I make this affidavit from within the territory of the United States of America under the laws of the United States and the State of _____.

29) I swear that the facts stated above are true, complete, and accurate, placed in full and proper context, except perhaps where there is a legal conclusion from those stated facts such that the conclusions must be argued by an attorney or other legal professional.

I hereby certify under the penalty of perjury that the foregoing Declaration is true and correct to the best of my knowledge and belief.

February 12, 2024                                   _____
                                                                    BRAD RUKSTALES

5